## Blythe et al. v. Denver & R. G. R'y Co.

1. **Carrier — Action for Value of Express Package Lost Through Disaster to Train.—** In an action against a railroad company to recover the value of an express package alleged to have been lost through the negligence of the company, and the failure to make proper efforts to save it, in a disaster to the train, it appearing that the express car, with three others, was blown from the track by a violent gale of wind, into such a position that all the goods must have been thrown into one corner, at the top of the car; that the car was immediately set on fire by the stove or lamp therein, and so quickly consumed that the messenger escaped with difficulty; that the wind was so violent as to make it almost impossible to stand or walk at the time, and that the package could not have been rescued by the exercise of proper exertion and diligence, the finding of the jury that the "act of God" was the proximate cause of the loss, and that there was no negligence, was fully warranted by the circumstances.

2. **Instruction — Proximate and Resulting Cause of Loss.—** While the immediate resulting cause producing the loss was the fire, which might be termed an "inevitable accident," and this grew out of the disaster caused by the wind, which was the "act of God," and the proximate cause, yet the following charge could not have prejudiced the plaintiff, even if not technically correct: "Where one is pursu-

ing a lawful avocation, in a lawful manner, and something occurs which no human skill or precaution could foresee or prevent, and as a consequence the accident takes place, this is called 'inevitable accident' or the 'act of God.'"

## Error to District Court of Arapahoe County.

PLAINTIFFS in error brought suit against the defendant as a common carrier for the loss of a package of merchandise consisting of gold and silver watches, watch-cases and movements, of the alleged value of $726.95, delivered to defendant at Alamosa by one J. B. Moomaw, to be carried as an express package, directed to and to be delivered to plaintiffs at Denver. The package was not valued, and was accepted and receipted for as an ordinary package at a nominal valuation of $50, upon which charges of sixty-five cents were paid in advance for its transportation.

The defendant, after denying the material allegations of the complaint, admitted the receipt of the package, the payment of the money for its transportation, the execution and delivery of its receipt for the same, and specially alleged as defenses: *First*, that the car in which such package was being transported was blown from the track by a furious wind, and the car and contents destroyed by fire, and that the loss was by inevitable accident and " the act of God; " *second*, that the shipper fraudulently concealed the value of the package, and it was received as being only of the value of $50; that it was placed in the body of the car, where ordinary packages were usually carried; that defendant had a fire-proof safe in the car, and had the shipper given the true value, and paid transportation for such value, the goods would have been placed in the safe, and would not have been lost; that, by the terms of the receipt given, defendant was exempted from any liability exceeding $50.

A replication was filed putting in issue the special matters pleaded in defense, and averring negligence in not securing the package in the safe, and in not making proper

efforts to save the property at the time of the disaster. The case was tried to a jury, resulting in a verdict for the defendant, and judgment upon the verdict.

Mr. LUCIUS P. MARSH, for plaintiffs in error.

Messrs. WOLCOTT & VAILE, for defendant in error.

REED, C.   It is conceded that the wrecking of a portion of the train, such portion consisting of one engine and four cars, one being the express-car in which the goods were being carried, was by "the act of God," and inevitable. It is also conceded in argument that having a coal fire burning in a stove, and a lighted lamp in the compartment, as testified to, was not negligence on the part of the carrier. Counsel for plaintiffs in error in reply say: "In the brief of defendant in error, counsel have assumed for us a claim which we have not made, and they then proceed to demolish such assumed claim. They assume for us that we claim there was negligence in carrying in the car a stove with fire in it.  *  *  *  There was negligence,— we may call it by that name,— but such negligence was in not making the requisite efforts to save the goods after the peril had been incurred. We make no claim that there was negligence in carrying a stove in the car." By these concessions, two important questions are eliminated, and the issues are narrowed, the only questions remaining being: .

*First.*   Was "the act of God" the proximate and direct cause of the loss sustained, so as to exonerate the carrier from liability, or was it the remote cause, and the fire against which the carrier is supposed to be an insurer the proximate and direct cause?

*Second.*   After the wrecking and overturning of the train by "the act of God," was the carrier guilty of negligence in failing to protect and secure the goods in the burning car?

Great ability and research have been expended in attempting to arrive at and determine upon some general

definition of the terms "proximate" and "remote" causes, and establish a rule and a line of demarkation between the two. Such efforts appear to have been but •partially successful. Both have received various definitions, though differently worded, amounting to practically the same thing. But, in almost every instance where they have been attempted to be applied, their applicability seems to have been determined by the peculiar circumstances of the case under consideration. Webster defines "proximate cause," "that which immediately precedes and produces the effect, as distinguished from the remote, mediate, or predisposing cause." And. Dict. Law: "The nearest, the immediate, the direct cause; the efficient cause; the cause that sets another or other causes in operation, or dominant cause." But with these definitions in view, when two causes unite to produce the loss, the question still remains, which was the proximate cause?

In *Insurance Co. v. Tweed*, 7 Wall. 52, the late lamented Mr. Justice Miller said: "We have had cited to us a general review of the doctrine of proximate and remote causes, as it has arisen and been decided in the courts in a great variety of cases. It would be an unprofitable labor to enter into an examination of these cases. If we could deduce from them the best possible expression of the rule, it would remain after all to decide each case largely upon the special facts belonging to it, and often upon the very nicest discriminations."

In *Howard Fire Ins. Co. v. Norwich & N. Y. Transp. Co.* 12 Wall. 199, in delivering the opinion of the court, Mr. Justice Strong said: "And certainly, that cause which set the other in motion, and gave to it its efficiency to do harm at the time of the disaster, must rank as predominant."

In *Railroad Co. v. Kellogg*, 94 U. S. 475, it is said: "The inquiry must, therefore, always be whether there was any intermediate cause disconnected from the primary fault, and self-operating, which produced the injury."

In *Insurance Co. v. Boon*, 95 U. S. 130, it is said: "The proximate cause is the efficient cause; the one that necessarily sets the other causes in operation. The causes that are merely incidental, or instruments of a superior or controlling agency, are not the proximate causes and the responsible ones, though they may be nearer in time to the result. It is only when the causes are independent of each other that the nearest is, of course, to be charged with the disaster."

Leaving out of consideration, as we must, by concession of counsel, all question of negligence in regard to the burning fire in the stove, a lighted kerosene lamp, and regarding each of them as securely protected against damage as prudence would require, and applying the rules above laid down, it becomes apparent that the overturning and wrecking of the car by the violence of the wind was the proximate, direct and efficient cause of the loss, and the fire following, if not instantaneously, immediately after, without negligence or any wrongful act of the carrier intervening to produce it, must be regarded as resulting and incidental.

It is ably contended in argument, and many supposed authorities in support of the position are cited, that the negligence of the carrier in failing to use proper exertion to save the contents of the car, after it was overturned, rendered the defendant liable for the loss. If, by proper diligence and attention, the goods could have been rescued, a failure to secure them would have fixed the liability of the carrier. There can be no doubt of the correctness of this conclusion.

The questions, what was the proximate cause of the loss, and of negligence, were questions of fact to be determined by the jury from the evidence, under proper instructions from the court. There was not much conflict of testimony. In *Railroad Co. v. Kellogg, supra*, it is said: "In the nature of things, there is in every transaction a succession of events, more or less dependent upon those preceding, and

it is the province of the jury to look at this succession of events or facts, and ascertain whether they are naturally and probably connected with each other by a continuous sequence, or are dissevered by new and independent agencies; and this must be determined in view of the circumstances existing at the time."

The jury found as a fact that the "act of .God" was the proximate cause, and also found as a fact that there was no negligence. Viewed in the light of all the evidence, and of attendant circumstances, the finding of the jury was fully warranted. The force of the gale was such as to blow the cars from the track over the embankment. It was shown to be almost impossible for men to stand or walk, and they were compelled to prostrate themselves under the lee of the track or bank to escape its fury. The air was so full of dust and flying material that scarcely anything could be seen. The car contained inflammable material, and the fire succeeded the overturning almost instantaneously. The messenger escaped with great difficulty, and not without injury from the flames. The position of the car was such that all movable goods must have been hurled into the corner of the top of the car. From the force of the wind and combustible material of the car, it is obvious that the destruction of the car and contents was inevitable in a very brief space of time, and that any attempt to rescue the goods would have been unavailing.

Considerable criticism is directed to the instructions of the court. Some of those criticised, and upon which errors are assigned, are in regard to negligence in the use of the stove and lamp. As counsel concedes in his final argument that there was no negligence in that respect, a review of them becomes unnecessary. Considerable attention is given to the eighth instruction, in which the learned judge charged: " Where one is pursuing a lawful avocation, in a lawful manner, and something occurs which no human skill or precaution could foresee or prevent, and as a consequence the accident takes place, this is called 'inevitable accident'

or the ' act of God.' " The objection urged is more technical than substantial. While it is, possibly, not technically correct, and while there is a legal distinction between " inevitable accident " and the " act of God " we can see nothing in it to the prejudice of the plaintiff, or that could have misled the jury. The immediate resulting cause producing the loss was the fire, which might properly be termed an " inevitable accident " growing out of the former disaster; while the direct cause of the agency that worked the destruction was the " act of God," putting the resulting agent at work. We think the charge, taken as a whole, was a fair and impartial statement of the law, and should be sustained. We advise that the judgment be affirmed.

RICHMOND and BISSELL, CC., concurring.

PER CURIAM. For the reasons stated in the foregoing opinion the judgment of the court below is affirmed.

*Affirmed.*

MR. JUSTICE ELLIOTT, having tried this cause below, did not participate in this decision.