[No. 1356.]

DENVER & RIO GRANDE RAILROAD CO. v. ANDREWS.

1. RAILROADS—NEGLIGENCE—SNOWSLIDE.
A railroad company is not liable for injuries to a passenger caused by a snowslide in the mountain which struck and derailed the train at a point on the road where a slide had never been known before, and where there was no reason to anticipate one. A snowslide in such a case is an inevitable accident.

2. SAME.
The use of a snowplow, which had usually been sufficient to clear the track in such cases, instead of a rotary, was not negligence where the evidence showed the rotary would not have been useful in the damp snow, and would not have prevented the accident unless, possibly, by being run ahead it might have brought down the slide before the arrival of the train.

3. APPELLATE PRACTICE—OMISSION FROM RECORD.
The omission of unimportant evidence, not bearing on the main issue from the bill of exceptions, does not preclude an examination of the bill of exceptions on appeal.

*Appeal from the District Court of La Plata County.*

Messrs. WILSON & McCLOSKEY, Messrs. WOLCOTT & VAILE, and Mr. WM. W. FIELD, for appellant.

Mr. T. J. JACKSON and Mr. F. C. PERKINS, for appellee.

Bissell, J., delivered the opinion of the court.

The casualty which wrecked the Rio Grande train between Antonito and Durango was involved in a suit decided in this court at the January term of 1897, found in the 9th Colo. Court of App. 86.   *Denver & Rio Grande Railroad Company v. Pilgrim.*   The two suits were tried on a totally different basis.   In the *Pilgrim* case the plan adopted in the make-up of the train was the negligence charged.   In the present suit what is averred is negligence in its operation.   In the statement of facts we shall be less full and precise than usual because the former opinion fully illustrates the situation.   On or about the 1st of February, 1893, Mrs. Andrews was a passenger for hire on the train when the accident happened. When the train started from Alamosa it was made up of two engines, a combination mail and baggage car, a passenger coach, and a sleeper.   At Antonito an engine was detached from a freight and put in front of it, and to this engine was attached a snow or push plow to clear the track.   It appeared that the superintendent of this division of the road was advised at Alamosa that a storm was prevailing in the mountains, and he apparently had further advices respecting its extent and severity at Antonito where he attached the snowplow and the freight engine.   The caboose was taken off the freight and coupled on to the rear end of the train in order to have it taken back by the added engine when it returned to Alamosa.   The superintendent rode on it to the point of the accident.   The train encountered a good deal of snow, though it was not enough to obstruct its regular running, and it was able notwithstanding the obstruction to make the usual time, and it was nearly on schedule when it reached the point where it was thrown from the track.   For some distance, from what is known as Toltec Station, the road is full of curves.   What is called Phantom Curve commences at the place of the accident.   It is very difficult to describe the precise condition which is well illustrated by the photographs which are attached to the bill

of exceptions as exhibits which were offered in evidence. We will endeavor to state the situation. The road there runs nearly west, and in the direction in which the train was going the hillside is on the right of the track. At a short distance from the track the mountain rises quite abruptly, though a little further back it slopes off again, and the bottom is seamed and divided by gulches or gullies. Immediately at the point where mile post 311 is set there is a narrow gulch coming down from the range which opens out at the bottom into a small gulch or draw covered with rocks. Right at the mile post the ground is nearly level for about thirty-five feet when it arises abruptly and sharply. On the opposite or left hand side there is a very deep ravine running at a very acute angle to the bottom of the gulch. As the train reached this mile post there was considerable snow on the track, probably some two or three feet, possibly more, but the motive power was sufficient to force the snow off and enable the train to maintain its usual time. Just as the head engine reached the cut at the beginning of Phantom Curve the snow which filled the gulch first described moved down and produced what is commonly known as a snowslide, pressed against the train and almost instantly threw the passenger coach, sleeper and the caboose bodily off the track, and they went rolling down the hill for about 180 feet, when the sleeper in which Mrs. Andrews was riding struck a tree, split in two, and the cars were thus stopped. Strange to say, nobody was very severely hurt, and so far as we are advised by the two records, the only persons receiving much injury were the porter and Mrs. Andrews. For these injuries they both brought their independent suits on the bases which have been suggested. The first suit was reversed on an instruction and the case was sent back for a new trial, because there was evidence in the record respecting the plan adopted in the make-up of the train which left a question for the jury whether the road had adopted the usual plan, and the one most consistent with the greatest safety of the passengers and the responsibility resting on

the carrier.   The case was accordingly sent back for a new trial.

· In the present suit no such question is presented and we are now called on to determine whether the railroad company is responsible for such an accident and for injuries occurring in this manner without some proof of negligence, either in the machinery, construction or appliances used in running the train, the condition of the track, or the plan adopted in its operation.   To show the plaintiff's case we need only state that her proof was confined entirely to a statement of the accident itself.   She made proof that she was a passenger for hire, and was being transported under her contract, that the accident occurred, the train was pushed bodily down the hill and she was injured.   Her proof exhibited nothing else.

A motion for a nonsuit was denied and the defendant proceeded to put in its proof.   It offered the testimony of Mr. Lydon, the superintendent who was on the caboose, of the conductor who was on the train, and of the engineers who were operating the engines, as well as one or two others who were on the train.   According to this evidence as the train ploughed through the snow there came a sudden shock; the attention of the superintendent was attracted, and from the rear end of the caboose where he was standing at the time he looked in front and saw the slide pushing the train off the track.   As he described it, he saw "the tail end of a slide." He jumped from the caboose and did not go down the hill. According to the evidence of the plaintiff and another witness whom she produced the shock and the overturn of the car were simultaneous.   There was a grating sound and the snow struck the car.   This frightened Mrs. Andrews and she sprang to the side of the car where her two children were, and as the witness put it, she hardly had time to jump from one side to the other and seize them when the car rolled down the hill.   This testimony shows very conclusively that the slide struck the train and almost immediately shoved it off the track and down the hill.   This circumstance presents the

very plain question whether a railroad company can be held responsible for a snowslide which occasions injury when it proceeds from causes over which the company has no control, and under circumstances which it is bound neither to anticipate nor expect, and against which, under the circumstances, it was not bound to make provision. This question has been likewise settled by the supreme court, and if the facts justify the application of the rule the company was in nowise responsible for the injury. *Blythe v. D. & R. G. R. R. Co.*, 15 Colo. 333.

That case decides that an inevitable accident or an act of God does not give rise to a cause of action. We need then only determine whether this snowslide was an inevitable accident. We are very clearly of this opinion. We do not intend to hold that there might not be cases and circumstances under which the company would be bound to take extraordinary precautions against snowslides, and failing to take them, might be held responsible. This is not such a case nor is it brought at all within the exception. The train was running on a road which had been operated for many years through a country which is subject to heavy snows, but which at no time theretofore had been found subject to the dangers of snowslides. The employees who testified had run on the road for many years, and their uniform evidence was to the point that no slide had ever been known at that point. There was then in the existing conditions nothing to forewarn the company, nothing to lead them to take unusual precautions or care, and nothing which would lead them to believe it to be necessary to pursue any other course than the one followed in operating the train. According to the evidence of these experts, the train was made up in a way in which it had been theretofore run with perfect safety. We find nothing in the testimony with reference to the rotary which at all affects these conclusions or the evidence in this particular. It is quite true that a rotary is sometimes the best and most expedient appliance to use in certain cases, but there was nothing in the present to lead one skilled in the operation of

trains to the conclusion that it ought to be used.   As we read the testimony it was the opinion of those witnesses that the rotary would have been unavailable, and that it would not have prevented the accident unless it had been run ahead of the train, and possibly brought the slide down so that it would have spent its force prior to the arrival of the train. As Mr. Lydon, who was a man of many years' experience in railroading testified "the rotary would not have been useful in that damp and heavy snow," and the only inference that can be indulged is that had it been sent ahead of the train, the accident might possibly not have occurred.   This remote contingency railroads are not bound to anticipate or prepare for.   If the conditions are not unusual but are the same as have existed for a long time and appliances which are used are the same as have theretofore been found ample and sufficient, the failure to adopt any other means, which after the accident it might be seen might have prevented the occurrence, cannot be called negligence.   As I said in the *Pilgrim* case:  " To run a train made up in this way over that particular part of the road, and under the specified circumstances, is not, therefore, necessarily negligent; nor are we at all clear that the company could be adjudged negligent to attempt to run its train in a snowstorm up this grade, and over the divide.   If this should be held, it would practically result in forcing a railroad company to cease the operation of its trains in snowstorms, and over the mountains, through the greater part of the winter.   The court and everybody else knows that every winter all roads running through the mountains must operate their trains in snowstorms, and they must make their connections in order to carry on their business, and they must arrange their trains for the purpose of furnishing force and power to meet the obstruction which the snow occasions.   Of course, if it happens that a case is developed which demonstrates that the method by which the train was operated was a negligent one, tending to produce the accident complained of, the company would be held responsible. This is not such a case.   The company had no reason to an-

ticipate a slide at that point, nor is there anything in the record to show that the train was being operated in a negligent or dangerous way, which contributed to the injury. All the evidence tends in a contrary direction."

These remarks are of even more force as this case stands on the record. The plaintiff failed to show any negligence nor was it established by any testimony offered by her or by the defendant that the failure to use the rotary was negligence or that the failure to use it caused the accident or that its use would have prevented it. We are of the opinion that the accident was inevitable, that the company was not bound to anticipate it, and are therefore not responsible for it.

The company by its affirmative proof rebutted any possible presumption of negligence, and in reality showed the exercise of due care and that it took those precautions which as common carriers they were bound to take for the protection of their passengers. Therefore, the plaintiff was not entitled to recover.

It was suggested in the argument, that we are not at liberty to examine the record and determine the case on the proof because the bill of exceptions does not contain all the evidence introduced. This objection was applied to exhibits E and F produced at the trial. We do not discover that either of those exhibits were offered in evidence, or if they were that the evidence was of such significance or importance as to compel us to observe the rule. In the first place the blue print was in the record and with the bill of exceptions, although not affixed to it. In examining it, we do not discover that it affords the slightest aid in the determination of the case, or would have been of any value had it been offered in evidence and attached to the bill of exceptions. The same remark would hold true of the other. We do not understand the rule to be that where it is evident from the record itself and from what is produced that the omissions are inconsequential and do not bear on the main issue, the omission will inhibit us from an examination of the record. When it has been observed in either court, it is in cases where as the

learned justice put it (*Charles v. Hallack Lumber Co.*, 22 Colo. 288), the exhibits "are important and essential factors in determining the principal issue."

We are so clearly of the opinion that the plaintiff failed to make out a case, and that the defendant's evidence so plainly established a case of inevitable accident, that unless there be some other evidence of negligence the plaintiff cannot recover. The verdict is not sustained by the testimony and the judgment will therefore be reversed and the case remanded.

*Reversed.*

WILSON, J., not sitting.