[No. 1635.]

THE GRAND VALLEY IRRIGATION CO. v. PITZER.

NEGLIGENCE—DAMAGE—ACT OF GOD.

The owner of an irrigating ditch is not liable for damage caused by an overflow of the ditch, where the proximate cause of the overflow was an unprecedented storm such as had never been known in the vicinity, and where the owner's negligence in no way concurred in or contributed to the cause of the injury.

*Appeal from the District Court of Mesa County.*

Mr. CHARLES F. CASWELL, Mr. B. C. OYLER and Mr. JOHN P. BROCKWAY, for appellant.

Mr. HENRY W. ROSS and Mr. STRAUD M. LOGAN, for appellee.

Mr. B. C. HILLIARD, of counsel.

WILSON, J.

The defendant company is the owner of an irrigation canal about fifteen miles or more in length, in Grand valley, Mesa county. The water for the canal is taken from Grand river, and is used for the irrigation of farming lands in its vicinity belonging to its stockholders. The plaintiff Pitzer is the owner of a small tract of cultivated land on the line of and under the canal. On September 23, 1896, it is alleged the canal overflowed and deposited a large amount of débris on the land of plaintiff, destroying fruit trees and doing other

damage.  He claimed that the damage occurred through the negligence of the defendant company, and brought this suit to recover therefor.  The charges of negligence set forth in the complaint upon which reliance was had in the trial were substantially, that the canal was negligently constructed in that for a distance of more than four and one half miles east of the plaintiff's land, no wasteway or other means was provided for carrying off the surplus waters that find their way through the canal from the hills, etc.  Also that the company had permitted the erection in the canal of a water wheel at a point near his land, thereby obstructing the current in the canal and contributing to the damage; and, thirdly, at the time of the storm which occasioned the accident, no ditch rider or other employee of defendant company was on or about the banks of the canal in the vicinity of plaintiff's land until after the damage had occurred.  Plaintiff recovered, and defendant appeals.

There are numerous assignments of error, and considerable stress is laid by the defendant on its contention that the complaint is defective in that the charges of negligence are not properly stated, and that the plaintiff in the introduction of his testimony was not restricted to that which would support only the specific acts of negligence attempted to be alleged.  In the view which we take of the case, however, it will not be necessary to discuss this.

It appears that the break or overflow which occasioned the damage occurred during a rain storm which prevailed continuously for a period of about eighteen hours.  A large number of witnesses testified, and the overwhelming weight of the evidence,—in fact it is practically undisputed,—was that the storm was of the most unprecedented severity experienced since the settlement of the valley.  According to the uniform testimony of numerous witnesses, the whole country was flooded for many miles, bridges on the county roads, railroad tracks and bridges, fences, ditches and other improvements were washed away.  Mr. Allen, who had resided in the valley for more than ten years, said that the

storm was incomparably greater than anything he had ever seen before ; that he rode over the country east of the town considerably, and during the morning of the storm, as he says, " I rode my horse in a sheet of water for eighty rods a foot to two feet deep. A half mile further on, I found the entire country overflown with a river of water." Mr. Bevier, who had resided in the valley for more than fifteen years, testified to the same effect. He said : " The storm resulted in washouts all along the ditches and railroads. I was through it all the morning of the 23d. I waded in water all the way from two inches to two feet deep on my place." Mr. Orr, also an old resident, testified that one of the most noticeable things to be seen from the elevation of his place was three passenger trains that couldn't get through the water. He also stated that a great many bridges were washed out on the county roads, laterals were filled up and fences were washed away. Mr. C. W. Steele, a resident for more than fifteen years previous, testified that the storm " was unprecedented for severity, for the amount of rainfall and for the widespread destruction caused by the overflow of the water. There has been no other storm since I have been in the valley that was equal to it in amount of rainfall, or severity, or amount of damage it caused to ranches, ditches, culverts, railroad tracks and everything of the kind." This witness also stated, that in places there were indications of water spouts. Dr. S. M. Bradbury, a resident of Grand Junction in the vicinity of this canal, who had for more than four years previous kept for the government a record of the water precipitation, testified that his record showed a precipitation nearly four times as great as that of any previous rainfall during the time.

From this great mass of practically undisputed testimony, we cannot conclude otherwise than that the overflow and breakage of the canal, and the damage to plaintiffs were the proximate result of an inevitable accident or an act of God, for damages arising from which the defendant was not responsible,

We are aware of the rule that, if damages were caused by the concurring force of a defendant's negligence and some other cause for which he is not responsible, including the act of God, the defendant is nevertheless responsible if his negligence is one of the proximate causes of the damage within the proper definition of proximate cause. Sherman & Redfield on Negligence, § 39; *Chidester v. Ditch Co.*, 59 Cal. 197.

A close examination of the evidence preserved in the abstract discloses to us nothing, however, which brings this case within that rule. The burden was upon the plaintiff to show this, and he failed to do it. On the contrary, it was shown that there was a wasteway within this section of four and one half miles, besides a number of culverts under the canal to carry off the water upon the Mesa above it, and that, during the whole existence of the canal, this wasteway and these culverts had, previous to this time, been amply sufficient to carry off the waste and storm water, and to prevent damage to adjacent lands.

Further, it does not appear but that if there had been numerous other wasteways and culverts within this section, there is any reasonable expectation that the damage in this case could have been prevented. The whole canal itself was torn away in many places for long distances, and had to be practically rebuilt in such places. It further appeared that the ditch rider employed by the company was at the place where his duty required him to be, namely, at the headgate, for the purpose of shutting off the flow of water from the river into the canal, so that during the storm the latter might be wholly utilized for the purpose of carrying off the storm water; and it does not appear from the evidence that, if he or any number of others had been present along the line of the canal near the plaintiff's land, they could have prevented the damage.

So far as disclosed by the evidence, the damage proximately resulted, not from human agency, but from one of those unexpected, unanticipated, superior causes over which

the canal company had no control, and which no reasonable precautions could have prevented. We think it clear, therefore, that under the case as presented here, the defendant cannot be held liable. *Blythe v. D. & R. G. R. R. Co.*, 15 Colo. 333; *D. & R. G. R. Co. v. Andrews*, 11 Colo. App. 204.

In a subsequent trial, if one is had, the evidence may show some negligence on the part of defendant sufficient to impose upon it a legal liability for the damages claimed, but on the trial which we are now considering this was not. the case. It follows that the judgment must be reversed, and it will be so ordered.

*Reversed.*

THOMSON, J., not sitting.