## HALE *against* THE NEW-JERSEY STEAM NAVIGATION COMPANY.

The owners of a steam vessel, carrying for hire the goods of all persons indifferently, from place to place, are common carriers.

As such, they are liable for all losses, though by inevitable accident, except they arise from the act of God, or public enemy.

That the loss resulted from the agency of the propelling power, does not exempt the carriers from liability.

Nor is it a ground of exemption, that the loss occurred on the high seas.

Contracts are to be construed according to the laws of the state in which they were made, unless it is presumed from their tenor, that they were entered into with a view to the laws of some other state.

Where a steam-boat was in the business of transporting goods from *New-York* to *Providence ;* the plaintiff owned carriages, which he wished to have transported to *Boston ;* the carriers received them in *New-York,* to convey them to *Providence* or *Boston ;* and they were lost in the *Sound,* near *Huntington, L. I. ;* it was held, that the contract of the parties was to be governed by the laws of *New-York.*

By the laws of *New-York,* common carriers cannot restrict the liability imposed upon them by the common law, by a public notice, brought home to the knowledge of the freighter.

*Qu.* Whether by the laws of *New-York,* the acceptance by the freighter of a bill of lading from the carriers, containing a restriction against liability for loss by fire, not occasioned by negligence, will exempt the carriers from liability.

Though by the rules of the common law, foreign laws, including the laws of our sister states, cannot be judicially noticed, but must be proved as other facts, and determined by the jury; yet, by statute, the public statutes of the several states in the *United States,* printed by authority, are legal evidence of the existence of such statutes, and the reports of the judicial decisions of other states and countries, are evidence of the common law thereof, and both may be judicially noticed ; and if the jury, under the direction of the court, have given a correct verdict, it will not be set aside, because the law of another state, involved in the case, was not formally submitted to them as a question of fact.

THIS was an action on the case ; tried, on the general issue, at *New-Haven, October* term, 1842, before *Williams,* Ch. J.

The plaintiff claimed, that, on the 10th of *January,* 1840, the defendants, being owners of the steam-boat *Lexington,*

HARVARD LAW LIBRARY

*New-Haven,*
*July, 1843.*

Hale
*v.*
The New-Jer-
sey Steam
Navigation
Company.

which had, for several years, been one of the line of boats transporting goods for hire, from *New-York* to *Stonington* and *Providence,* for all persons who chose to employ them, the plaintiff, being the owner of two carriages, placed them on board that boat, in the city and state of *New-York,* to be by the defendants transported to *Boston,* or to *Providence,* on the way to *Boston ;* that on the night of the 10th of *January,* said boat, on her passage from *New-York* to *Stonington,* in *Long-Island Sound,* near *Huntington, L. I.,* was destroyed by fire, together with said carriages ; and the plaintiff claimed to recover of the defendants, as common carriers, for the value of said carriages, upon the ground that they were not destroyed by the act of God or the public enemies. The plaintiff also claimed, that the contract made with the defendants, was made in *New-York,* and was to be governed by the laws of that state, by which, he claimed, he was entitled to recover.

The defendants claimed, that they were not common carriers, or subject to their liabilities. They claimed further, that if they were, they had given public notice, by bills of lading and advertisements, that they would not be liable for losses incurred on their boats, except such as happened through want of care, or through negligence on the part of their officers and servants ; and that their agents had no authority to receive any goods on board, without delivering a bill of lading thereof, containing such a restriction ; and particularly, a restriction against liability for loss by fire, not occasioned by negligence. They also claimed, that the plaintiff, when he placed said carriages on board their steam-boat, well knew, that the defendants had given public notice, that they had so restricted their liability, and that the plaintiff dealt with them upon that understanding ; and claimed, that the court should charge the jury, that if they should find these facts, as claimed by them, and that the boat was sea-worthy, and every way equipped and fitted for the business in which it was employed, they must find a verdict in their favour.

The court charged the jury, that the contract being made in another state, was, in its construction, to be governed by the laws of that state, unless there was something to show, that the parties had reference to the laws of some other state ; and that nothing of the kind appeared here. Those persons,

who undertake generally to transport goods for hire, for all *New-Haven,* July, 1843. persons indifferently, and deliver them at a place appointed, are deemed common carriers, whether by sea or land, through the *Sound* or on rivers, in ships or steam-boats. Common carriers are liable for goods received to transport and deliver, if not delivered, except the loss arise from the act of God, or the public enemies. By the act of God, is meant something in opposition to the act of man—something super-human. With respect to the restrictions of their liability, which the defendants claim by virtue of their notices, or their bills of lading, the jury were instructed, that by the laws of the state of *New-York,* if the facts should be found to have been as claimed by the defendants, they would not operate to restrict their obligation as common carriers ; and therefore, if they should find the facts as claimed by the plaintiff, but should not find that the loss occurred by the act of God, or the public enemy, they must find a verdict for the plaintiff. The jury were also directed to find, 1st, whether there was any negligence on the part of the defendants, in the equipment or management of their steam-boat. 2dly, Whether any bill of lading was ever given, by the defendants, for these carriages. And 3dly, Whether the plaintiff had any actual notice of the limitation of the defendants' liability, as claimed by them.

Hale
*v.*
The New-Jersey Steam Navigation Company.

To the two first questions, the jury answered *No ;* and as to the last, they were not agreed. The plaintiff had a verdict ; and the defendants moved for a new trial for a misdirection.

*Kimberly* and *C. A. Ingersoll,* in support of the motion, contended, 1. That the jury having found, that there was no negligence on the part of the defendants, in the equipment or management of the steamer, they are not liable as common carriers, for a loss occasioned by fire. In the first place, it is to be borne in mind, that the law imposing upon common carriers the obligation of insurers, is of great rigour, and ought not to be carried any further, or extended to new cases. 2 *Peters,* 155. 2 *Kent's Com.* 471. Secondly, the rule of the common law has never yet been extended to losses by *fire,* happening upon the *high seas,* without the fault or negligence of the carrier. 2 *Kent's Com.* 473. Thirdly, it would be an unreasonable and impolitic extension of the rule, to

HARVARD LAW LIBRARY

*New-Haven,*
*July, 1843.*

Hale
*v.*
The New-Jer-
sey Steam
Navigation
Company.

apply it to *steam-boats*, wherein fire itself is the producing agent of the propelling power. *2 Kent's Com.* 473. 1 *Selw. N. P.* 333.

2. That the defendants in this case are exempted from the common law responsibility for loss or damage by fire, by the special contract of the parties. In the first place, it is competent for the carrier to restrict his common law liability, by notice to that effect, brought to the knowledge of the bailor. *2 Kent's Com.* 470. and cases cited. *Story on Bailm.* 354, 5, 6. and cases cited. *Bean* v. *Green,* 3 *Fairf.* 422. *Barnwell* v. *Hussey,* 1 *Const. Rep. S. C.* 114. *Atwood* v. *The Reliance Transportation Company,* 9 *Watts,* 87. But secondly, however this may be, if the parties voluntarily contract for a limited responsibility, such contract is valid and effectual in law. Thirdly, in this respect, the law of the state of *New-York* is in no-wise different from the common law of *England.*

3. That what the law of another state is, in this case, as in all others, is a question of *fact* for the jury ; and this question should have been left to them. *Brush* v. *Scribner,* 11 *Conn. R.* 390. *Dyer* v. *Smith,* 12 *Conn. R.* 384.

4. That the law of the state of *New-York* is not the law of the contract. The contract is, to carry the goods from *New-York* to *Boston,* and *there deliver them ;* and the breach assigned is, the non-delivery *in Boston.* Now, the rule of law as to a contract entered into in one state, to be performed in another, is, that the law of the latter state is to govern such contract. *2 Kent's Com.* 600.

*Baldwin* and *Robinson,* contra, contended, 1. That the contract being made in the state of *New-York,* is to be governed, in its construction, nature and effect, by the laws of that state, there being nothing to shew, that it was entered into with reference to the laws of any other state. *2 Kent's Com.* 457. *Sto. Confl. Laws,* 227. *Smith* v. *Mead,* 3 *Conn. R.* 253. *Medbury* v. *Hopkins, Id.* 472. *Atwater* v. *Townsend,* 4 *Conn. R.* 47. *The Philadelphia Loan Company* v. *Towner,* 13 *Conn. R.* 249. *Jones* v. *Ætna Insurance Company,* 14 *Conn. R.* 501.

2. That in *New-York,* as at common law, all persons who undertake generally to transport goods for hire, either by water or on land, for all persons indifferently, and deliver

them at a place appointed, are common carriers. 2 *Kent's* *New-Haven,*
*July, 1843.*
*Com.* 598. 607, 8.  *Sto. Bailm.* 322.  *Elliott* & al. v. *Ros-*
Hale
*v.*
*sell,* 10 *Johns. R.* 1.  *Allen* v. *Sewall,* 2 *Wend.* 327.  *McAr-*
The New-Jer-
sey Steam
*thur* v. *Sears,* 21 *Wend.* 190.  *Crosby* v. *Fitch,* 12 *Conn. R.*
Navigation
Company.
410. 419.

3. That common carriers are liable for goods received to
transport and deliver, if such goods are not delivered, unless
the loss arise from the act of God, or the public enemies ; and
by the act of God is meant something in opposition to the act
of man.  2 *Kent's Com.* 597.  *Sto. Bailm.* 318.  *Williams*
v. *Grant,* 1 *Conn. R.* 487.  *Crosby* v. *Fitch,* 12 *Conn. R.*
410.  *Hollister* v. *Nowlen,* 19 *Wend.* 234.  *McArthur* v.
*Sears,* 21 *Wend.* 190.  *Powell* v. *Myers,* 26 *Wend.* 591.

4. That by the laws of *New-York,* common carriers can-
not, by any form of notice, absolve themselves from the lia-
bility imposed upon them by law.  *Hollister* v. *Nowlen,* 19
*Wend.* 234.  *Cole* v. *Goodwin, Id.* 251.  *Gould* v. *Hill,* 2
*Hill's Rep.* 623.  *Alexander* v. *Green,* 3 *Hill's Rep.* 10.

5. That the verdict in this case being in accordance with
the common law, as well as the laws of this state, a new
trial will not be granted, to give the party the benefit of the
law of another state, unless that law is well settled in his
favour, and entirely imperative.  *Brush* v. *Scribner,* 11 *Conn.*
*R.* 388.

Williams, Ch. J.  The suit was brought for two carriages,
shipped on board the *Lexington,* against the defendants, as
common carriers, to be transported in said boat, for hire, from
*New-York* to *Boston* or *Providence.*  The boat and goods
were destroyed by fire, in the *Sound;* and a verdict being given
for the plaintiff, the defendants excepted to the charge, and
claimed,

1. That they were not common carriers, or subject to the
rules that govern common carriers.  It was long since settled,
that any man, undertaking for hire to carry the goods of all
persons indifferently, from place to place, is a common car-
rier.  *Gisbourn* v. *Hurst,* 1 *Salk.* 249.  Common carriers,
says judge *Kent,* consist of two distinct classes of men, *viz.*
inland carriers by land or water, and carriers by sea; and in
the aggregate body are included the owners of stage coaches,
who carry goods, as well as passengers, for hire—wagoners,

HARVARD LAW LIBRARY

*New-Haven,*
*July, 1843.*

Hale
*v.*
The New-Jersey Steam Navigation Company.

teamsters, cartmen, the masters and owners of ships, vessels and all water craft, including steam vessels, and steam tow boats belonging to internal, as well as coasting and foreign navigation, lightermen and ferrymen.    2 *Kent's Com.* 598. (2nd ed.)    And there is no difference between a land and a water carrier.    3 *Esp. Ca.* 127.    10 *Johns. R.* 7.    *Story on Bailments* 319. 323.

But it is said, the rule established is a harsh one, and ought not to be extended.    Chancellor *Kent* takes a very different view of it.    He speaks of it as a great principle of public policy, which has proved to be of eminent value to the morals and commerce of the nation ; (2nd *vol.* 602.) and with similar views, this court has said, we are not dissatisfied with the reasons which originated the responsibility of common carriers, and believe they apply, with peculiar force, at this day, and in this country, as it respects carriers by water, more especially upon which element a spirit of dangerous adventure has grown up, which disregards the safety, not of property merely, but of human life.    *Crosby* v. *Fitch,* 12 *Conn. R.* 419.    And while we are not called upon to extend the principle, we cannot yield to the argument that common carriers are not to be responsible, when the loss arises from the producing agent of the propelling power.

If the defendants are common carriers, the question must be merely what are the liabilities of common carriers ?    The answer is, for all losses, even inevitable accidents, except they arise from the act of God, or the public enemy.    2 *Term Rep.* 34.    2 *Ld. Raym.* 918.    And by the act of God is meant, something super-human, or something in opposition to the act of man.    *Forward* v. *Pittard,* 1 *Term Rep.* 33.    In all cases except of that description, the carriers warrant the safe delivery of the goods ; (*per Kent,* Ch. J.    *Elliot* v. *Bissell,* 10 *Johns. R.* 7.) and masters and owners of vessels are liable as common carriers, as well at sea as in port.    And the Ch. J. says, that the argument is not well supported, that this doctrine of the liability of carriers, is, by the common law of *England,* to be confined to transportations by water, without the jurisdiction of the realm.    All the books and all the cases, which touch the subject, lay down the rule generally, and apply it, as well to shipments to and from foreign ports, as to internal commerce.    It is true, that in *Aymar* v. *Astor,*

6 *Cowen* 269. the then Ch. J., without citing a single authority, in giving the opinion of the court, says, the master of a vessel, I apprehend, is not responsible, as a common carrier, for all losses, except they happen by the act of God or the enemies of the country.    That case has, it is believed, never been treated as law, in *New-York* or elsewhere.    It is, indeed, repugnant to prior decisions, says Judge *Story*.    It is not to be taken for sound law, says Judge *Kent*.    12 *Conn. R.* 414. And in *McArthur* v. *Sears*, 21 *Wend.* 190. this case is treated as a confessed anomaly, and disapproved as contrary to decisions in other states, and even in their own.    And in a suit against the owners of a steam-boat on lake *Erie*, as common carriers, it was held, that nothing would excuse them, except inevitable accident, without the intervention of man, and the act of public enemies.    Judge *Cowen* denies that this case tends to repeal the law of liability of common carriers, and treats it as turning on the exception in the bill of lading.

    But it is said, there is no case where the liability is extended to fire on the high seas.    If the principle covers such cases, then it is to be supposed the reason such cases are not to be found, is, that they have not occurred, or were not contested. If the carrier is subjected for the loss of goods burnt on land, where he was in no fault, we see no reason for exempting the carrier at sea, under similar circumstances.    We apprehend a rule of policy, Lord *Mansfield* says, in the case alluded to, to *prevent litigation, collusion* and the necessity of going into circumstances impossible to be unravelled, the law presumes against the carriers.    He is in the nature of an insurer. Every reason here given applies as well to the owners of a steam-boat, as to the wagoner, whose carriage was burnt without his fault, in the barn where he placed it—the same danger of collusion, of litigation, and the same difficulty in unravelling circumstances.    If the policy of the law requires that the one shall be as an insurer, we think the same policy requires that the other should also be so treated.    And if it be true, that trade will regulate itself, when the rule is understood, compensation will be made, not only in proportion to the labour, but to the risk.    And in a recent case in *New-York*, steam-boat owners are treated as other common carriers.    *Powell* & al. v. *Myers*, 26 *Wend.* 591.

    It is stated, that by the laws of *Louisiana*, a different rule

*New-Haven,*
*July,* 1843.

Hale
*v.*
The New-Jersey Steam
Navigation
Company.

HARVARD LAW LIBRARY

*New-Haven,*
*July, 1843.*

Hale
*v.*
The New-Jer-
sey Steam
Navigation
Company.

prevails, in regard to steam-boats; but as the laws of that state are, in a great measure, founded upon the civil law, they can have but little influence here.

2. The defendants claim, in the next place, that they are not liable, because of the public notice which they gave, that they would not be responsible for losses other than what arose from the fault or negligence of their officers or servants; and they claim, that by the common law, a common carrier may limit his responsibility, by express contract, or by public notice given of such intended limitation; in support of which they cite many cases from the *English* books, where that doctrine, after some diversity of opinion, has been recognized and settled.   On the part of the plaintiff, it is claimed, that these decisions are modern—all since we were separated from that country—after a diversity of opinion in the *English* courts, and now regretted by eminent judges, and not in accordance with the principles of the common law; and that they have been rejected in *New-York*, as not sound law; and that, as this contract was made in *New-York*, its construction must be regulated by that law.   It becomes necessary, therefore, to determine by what law this construction of the contract is to be governed.

It appears that this boat was in the business of transportation from *New-York* to *Providence;* that the plaintiff owned carriages, which he wanted to have transported to *Boston;* that the defendants received them in *New-York*, to convey them to *Boston* or *Providence;* and that they were lost in the *Sound,* off *Long Island,* near *Huntington;* and the question is, by what law is this contract to be governed.   The rule upon that subject is well settled, and has been often recognized by this court, that contracts are to be construed according to the laws of the state where made, unless it is presumed from their tenor, that they were entered into with a view to the laws of some other state.   *Bartsch* v. *Atwater,* 1 *Conn. R.* 409. 416.   *Smith* v. *Mead,* 3 *Conn. R.* 255. *Brackett* v. *Norton,* 4 *Conn. R.* 520.   There is nothing in this case, either from the location of the parties, or the nature of the contract, which shows, that they could have had any other law in view than that of the place where it was made. Indeed, as the goods were shipped to be transported to *Boston* or *Providence,* there would be the most entire uncertainty

what was to be the law of the case, if any other rule was to prevail. We have, therefore, no doubt that the law of *New-York*, as to the duties and obligations of common carriers, is to be the law of the case. And while we agree with the defendants, that the modern *English* cases are as they claim, and authorize the common carrier to limit his responsibility, by notice to that effect ; we are equally clear, that the courts in the state of *New-York* have taken a very different view of the subject, and held, that the rule of the common law as to the liability of common carriers, was a rule founded upon sound principles of policy, to protect the citizens from losses, the true cause of which they could seldom detect ; and that it ought not, in this way, to be overthrown or evaded. In *Hollister* v. *Nowlen*, 19 *Wend.* 234. the supreme court of that state decided, that where a stage proprietor gave notice that all baggage should be at the risk of the owner, no contract could be implied from such notice, although it was brought home to the owner. So, also, in the case of *Cole* v. *Goodwin* & al. 19 *Wend.* 251. a similar decision was made ; and no authority or opinion in that state has been adduced to shake or invalidate these decisions. Without, therefore, giving any opinion as to the law of this state, which the case does not require, we cannot doubt that such a notice, by the laws of *New-York*, cannot, in any manner, affect the liability of these defendants, as common carriers. And these decisions are certainly supported, in a most able manner, by the learned judges who have pronounced them.

3. On the trial below, the defendants also claimed, that a bill of lading was given restricting their liability, and by accepting this, the plaintiffs were precluded from any claim. On this point the judge charged the jury, that by the laws of *New-York*, neither the notice, nor the bill of lading, would change the liability of the defendants. To the last part of the charge, as well as the first, the defendants object. But as the jury have found there was no bill of lading, in this case, we do not see any necessity for discussing that question ; but will barely advert to the cases in the state of *New-York*, which show the ground upon which that opinion was based.

In *Cole* v. *Goodwin*, notice was given, that all baggage was at the risk of the owners ; of which notice, it was proved, the plaintiff had knowledge. The plaintiff got out of the stage,

*New-Haven,*
July, 1843.

Hale
*v.*
The New-Jersey Steam Navigation Company.

HARVARD LAW LIBRARY

*New-Haven,*
*July, 1843.*

Hale
*v.*
The New-Jersey Steam
Navigation
Company.

and left his trunk; and the carriage went on, and the trunk was lost; and *Bronson,* J. said, that coach proprietors are answerable as common carriers, for the baggage of passengers; and that they cannot limit their responsibility, by a general notice, brought home to the employers, are now settled questions, so far as this court is concerned. And the court decided, that upon these facts, the plaintiff could recover. Judge *Cowen,* in an elaborate argument, held, that the restrictions imposed upon common carriers for great public objects, cannot be removed, by any stipulations of the parties. 19 *Wend.* 251. It is said, from what fell from Judge *Bronson,* (who concurred in the result,) in the former case, that he did not concur in this opinion. In a subsequent case of *Alexander* v. *Green,* 3 *Hill* 20. Judge *Bronson* says, it is very questionable whether inn-keepers and common carriers can contract for a limited liability. And in a note, the reporter says, the case of *Green* v. *Hill,* was not then decided. It was therefore thought, by the judge who tried this cause, better that the jury should pass upon the fact, and leave the question to be examined by this court. As it is, we are not called upon to settle the law of *New-York* on the subject; much less would we intimate an opinion, that it can be considered as the law of this state, though it is supported with great learning and ingenuity.

4. The defendants, however, claim, that the court below, aside from any question arising on the bill of lading, gave an opinion to the jury, that notwithstanding any stipulations of the parties restricting the liability of the carriers, they would be liable in this case. The judge who tried the cause below, had no idea of any question of that kind. No claim was made but what arose from the notice or the bill of lading. And we think, there is nothing upon this motion, which can be fairly referred to any thing else. What are the facts and claims stated in the motion? The defendants claimed, they had given public notice that they would not be liable for losses, except what arose from want of care or negligence on the part of their servants; and that their agents were not authorized to receive goods on board, without delivering a bill of lading, containing such restrictions. They further claimed, that the plaintiff knew of the notice given as above, and that they dealt with him upon that understanding. They then com-

*New-Haven,*
July, 1843.

Hale
*v.*
The New-Jersey Steam Navigation Company.

plain, that as to the restrictions claimed by these notices in their bills of lading, they could not, by the laws of *New-York,* limit their liability as common carriers. This charge met all the evidence offered by the defendants; for the claim of the defendants is founded only upon the notice and the bills of lading. They do, indeed, after setting out their notice, claim, that the plaintiff dealt with them upon that understanding. By this nothing can be meant or intended, but the understanding which is implied from the notice alluded to; and any implication against the bailor, arising from such knowledge or understanding, is explicitly repelled, in the cases alluded to, in the 19th of *Wendall.* We think, therefore, that the question was fully presented to the jury. They have negatived the fact as to the bill of lading; and the effect of the notice has been settled, by the supreme court of the state of *New-York.* We do not, therefore, see any ground for a new trial.

5. But it is claimed, that though such be the law of *New-York,* as it was not submitted to the jury to determine, the court erred. It would be going very far to send a cause back for trial, when we saw, that upon the facts shown, it appeared that it was correctly decided; and if, upon the same facts, a jury should decide otherwise, we must grant a new trial. Perhaps, however, this might be necessary, to prevent the judge from usurping the province of the jury; and it has been decided by this court, that foreign laws, in which, for this purpose, are included the laws of our sister states, cannot be judicially noticed, but must be proved as other facts. *Dyer* v. *Smith,* 12 *Conn. R.* 384. *Brockett* v. *Norton,* 4 *Conn. R.* 521. And the existence of the law being a question of fact, it would certainly seem as if it was the duty of the jury to settle it; and the court must assist the jury, says Judge *Hosmer,* in ascertaining what the law is; but if he went further, and definitively settled the question, it was erroneous. 4 *Conn. R.* 520. In *Kilgore* v. *Bulkley,* 14 *Conn. R.* 386. there were conflicting decisions in the state of *New-York;* and the judge left it to the jury to say which was law, with his opinion upon it; and the court held, that he was correct. Such were the decisions in this state; but our legislature, not willing to treat our sister states as foreign states, have enacted, that the public statutes of the several states in the *United States,* prin-

HARVARD LAW LIBRARY

New-Haven
July, 1843.

Hale
v.
The New-Jersey Steam Navigation Company.

ted by authority, shall be legal evidence ; and the court shall take judicial notice of them.   And now this court notice these statutes as they do our own.  *Woodstock* v. *Hooker*, 6 *Conn. R.* 36. *Smith* v. *Brush*, 10 *Conn. R.* 168.  And in 1840, the legislature passed another act, directing the reports of the judicial decisions of other states and countries to be judicially noticed, by the courts of this state, as evidence of the common law of such state or country, and of the judicial construction of the statutes or other laws thereof.   This seems to put the judicial decisions of other states on the same ground as their statutes ; and if we are judicially to notice their statutes, it would seem as if, in the absence of all other evidence, we must regard their decisions, when uncontradicted, as sufficient evidence of the law.

We think, therefore, that the instructions given to the jury, under the circumstances of this case, were correct ; and that there ought not to be a new trial.

In this opinion the other Judges concurred.

New trial not to be granted.