[No. 4453.  Decided December 16, 1902.]

J. W. BULLOCK, *Respondent*, v. WHITE STAR STEAMSHIP
COMPANY, *Appellant*.

CARRIERS — BREACH OF CONTRACT TO CARRY PASSENGER — MEASURE OF
DAMAGES.

In an action against a transportation company for failure to perform its contract to deliver plaintiff and his men at their destination, plaintiff is entitled to recover what it cost to live at the point where they were compelled to disembark, the cost of supplies and outfit to take them from there to their destination, the loss of time occasioned by not being landed at their point of destination, and the value of wages in their proposed line of work, which the party lost by reason of the delay *(Ransberry v. North American T. & T. Co.*, 22 Wash. 476, followed).

SAME — EVIDENCE — RATE OF WAGES.

In an action for damages for causing plaintiff to disembark at Nome, while his contract of carriage required that he should be landed on Port Clarence Bay, evidence of the rate of miners' wages current at Nome was admissible, where there was testimony that they were the same at both points, and where it is shown that plaintiff lost several days' time at Nome, while preparing to outfit for the trip to Port Clarence Bay.

SAME — RELEVANCY OF EVIDENCE — RELEASE OF DAMAGES.

Where the plaintiff was claiming damages on account of the loss to himself by reason of the delay and extra expense he was

put to on account of defendant's failure to carry him and his
men to their destination, and was not seeking to recover for dam-
ages suffered by the men in his employ, defendant was not en-
titled to put in evidence the release by one of the men of all dam-
ages on his own account.

SAME — SOURCES OF INFORMATION.

In an action against a transportation company for failure to
carry passengers to their destination according to contract, to
which the defense of impossibility of performance was interposed
on the ground that at the time of its failure the waters of the
bay at the point of destination were ice-locked, the defendant is
not entitled to put in evidence the sources of its information.

SAME — ACT OF GOD — ICE BLOCKADE.

A transportation company that has contracted to deliver pas-
sengers at a destination in Alaska, and made no contract excusing
non-performance in case the ice had not cleared from the port,
cannot invoke the failure of the ice to disappear as an act of God
for which it should not be held responsible.

SAME — LIMITATION OF CARRIER'S LIABILITY — CONSTRUCTION OF CON-
    TRACT.

Plaintiff bought a ticket from Seattle to Port Clarence, about
one hundred miles north of Nome, Alaska, but the voyage was
abandoned at Nome by the carrier, because of reports of ice in
Port Clarence Bay. The steamer ticket, signed by both parties,
provided that "if the purchaser of this ticket cannot for any rea-
son be safely landed at the port of destination upon arrival of
the vessel thereat, he may be landed at the next port reached by
the vessel upon the then voyage at which such landing can be
safely made." *Held*, that an instruction which told the jury, in
effect, that such provision of the contract did not apply because
the voyage had been abandoned at an intermediate point, was
properly given.

WITNESSES — EXAMINATION.

The fact that a witness had stated he could not tell "the
amount exactly" of goods lost would not be ground for exclud-
ing his answer to the further question, "State the amount as well
as you can, to the best of your knowledge," since it was compe-
tent for him to estimate the amount to the best of his knowledge.

NEW TRIAL — NEWLY DISCOVERED EVIDENCE — WANT OF DILIGENCE.

New trial on the ground of newly discovered evidence was
properly denied, where it appears that before trial defendant had

    .    29-30 WASH

procured the names of the new witnesses upon written interrogatories propounded to plaintiff several months before trial, but through a want of diligence had failed to obtain their addresses as well.

SAME — EXTENSION OF TIME FOR FILING AFFIDAVITS.

Refusal of an extension of time for filing affidavits in support of a motion for a new trial would not be error, where it appears that the affidavits would not establish a ground for a new trial.

Appeal from Superior Court, King County.—Hon. R. C. STRUDWICK, Judge *pro tem.* Affirmed.

*Richard Saxe Jones,* for appellant.

*Austin & Jeffery* and *John B. Hart,* for respondent.

The opinion of the court was delivered by

MOUNT, J.—This action was brought by respondent, alleging a breach of contract of carriage. Respondent purchased of appellant seven tickets for himself and six men from Seattle, Washington, to Port Clarence, Alaska. These tickets were to be used on the steamship Oregon, sailing from the port of Seattle on June 1, 1901. On the same steamer plaintiff shipped a quantity of miners' supplies to the same point. Port Clarence is a circular bay or body of water in Alaska, almost surrounded by low land and about twelve miles in diameter, connecting with Bering sea by a narrow channel. The steamer sailed on the appointed date and arrived at Nome, Alaska, on the 16th day of June. Nome is about 100 miles southwest of Port Clarence Bay, and the last port where the steamer landed on her outward voyage before reaching Port Clarence, which latter port was at the end of her voyage. Upon the arrival of the steamer at Nome, it was learned that Port Clarence Bay was ice-bound, that the ice extended some distance out in the sea, and steamers could not enter the bay. When this fact was learned, a meeting of all the

passengers bound for Port Clarence was held on board the vessel, and the officers of appellant company stated to the meeting, at which respondent was present, that, if all the passengers were willing to be landed on the "spit" which separated the bay of Port Clarence from the sea, they would be so landed; or, if they objected to that, then they could disembark at Nome and would be sent forward in the first vessel sailing from Nome, or they might remain on board and go .back to Seattle, and return on the next trip. Nearly all the passengers, about 140 in number, elected to disembark at Nome. Respondent, however, insisted that he should be carried to Port Clarence, or to the spit named. There was no landing place at this spit. Appellant refused this request, and told respondent that he could either return to Seattle or disembark at Nome. Without the knowledge of respondent, appellant sent respondent's baggage ashore. Respondent thereupon delivered up his bill of lading for his freight and disembarked at Nome. He demanded of appellant $5 per day for each of his men for expenses of living at Nome. This demand was refused by the appellant. The respondent, not having been informed as to the time of the arrival of another vessel (the time being indefinite and unknown on account of ice conditions), and without waiting therefor, proceeded to build small boats, and started therein from Nome to Port Clarence, where he arrived on the 17th day of July, 1901, some ten days behind the passengers who waited for another vessel sailing from Nome. On the trial in the court below the jury found a verdict in favor of respondent in the sum of $3,000. On a motion for a new trial the lower court required the respondent to remit $1,000 of this sum, and entered a judgment against appellant for $2,000. From this judgment appeal is taken.

It is alleged as error that the court permitted respondent

to testify to the amount it cost him to live and keep his men at Nome, and the cost of his supplies and outfit to take himself and men from Nome to the point of Port Clarence. This evidence is clearly within the rule laid down by this court in *Ransberry v. North American T. & T. Co.,* 22 Wash. 476 (61 Pac. 154), and was therefore not error.

Several errors are alleged because the court permitted evidence to show that respondent was not landed at his point of destination within a reasonable time, and therefore was caused additional expense in proceeding to his objective point beyond Port Clarence, and for loss of time occasioned by such delay. These elements, also, under the rule announced in the *Ransberry Case, supra,* are proper elements of damage, and no error was committed on this account.

It is alleged as error that the trial court permitted evidence of the value of miners' wages at Nome. The witness had testified that the wages at Nome were the same as at Teller, on Port Clarence Bay; moreover, he had also testified that plaintiff lost seven days' time with his men at Nome; and it was therefore not error to state the rate of wages current at that place.

Respondent was asked to state the value of the goods lost on the way from Nome to Port Clarence by reason of the elements. He answered: "I cannot tell the amount exactly." He was then asked the question: "State the amount as well as you can, to the best of your knowledge." This question was objected to upon the ground that the witness had already said he could not state the amount. But we think the witness had not said that he could not state the amount, but had simply stated that he could not state the amount exactly; meaning, of course, that he could not tell to a cent what his loss was. He certainly

was authorized to estimate the amount to the best of his knowledge, and this was the question which was asked. There was no error in this. The evidence was competent to go to the jury, and to be considered by them for what it was worth.

One of the men the respondent claimed to have taken with him on the trip north was a man by the name of Mahlon Groo. The appellant offered to show that it held the release of Mr. Groo of all claim for damages on his account. This the court refused, and error is based on this refusal. The respondent in this action was claiming damages on account of the loss to himself by reason of the delay and extra expense he was put to, and not for damages occasioned to the men in his employ. It is clear that a settlement with Groo for damages accruing to him could not affect the claim of the respondent. It was not error, therefore, to exclude the evidence.

Errors are alleged on account of the refusal of the trial court to permit appellant to show from what persons the master of the vessel and the general agent of the appellant received information that it was impossible for the ship to land or get into Port Clarence Bay, and also what was said by such persons to the master and the agent. The court, in ruling upon these objections, said: "You may tell what information you received, but it is not admissible what anyone told you." What the court meant by this, evidently, was that the witness might state what information he had received, but not who it was that gave him the information. If this evidence was admissible at all, it was admissible for the purpose of showing an excuse on the part of the master for not trying to land his vessel at Port Clarence, where a landing was impossible. The fact that Port Clarence Bay was closed to navigation on account of ice was the fact to be proven, and, if such was the fact,

it was certainly immaterial how or from whom such information was obtained. If such was not the fact, the appellant would certainly not be excused from performing its contract of carriage, no matter what its sources of information were. The appellant must act on such information at its peril. If the information was true, the appellant, in the name of diligence, would not be required to do a useless act. If the information was not true, the fact that it was obtained from high and reliable sources would not excuse the appellant from complying with its contract. The sources of information were therefore immaterial.

In this connection the appellant insisted at the trial, and insists here, that the conditions prevailing at Port Clarence were conditions over which it had no control, and that the abandonment of the voyage at Nome was made necessary by the fact that ice had not, at the time of the arrival of the vessel, cleared so as to open Port Clarence Bay to navigation; that this condition was caused by the act of God, on account of which the appellant would be released from fulfilling its contract. The rule was laid down in *Smith v. North American T. & T. Co.,* 20 Wash. 580 (56 Pac. 372, 44 L. R. A. 557), that, in order to excuse non-performance of a contract of carriage on the ground that an act of God made it impossible, there must be no want of diligence and no negligence and no want of judgment or skill on the part of the person whose duty it was to perform the contract. It certainly cannot be contended that a transportation company engaged in carrying passengers from one point to another may enter into contracts to carry passengers to ports which it has no knowledge or information that it can reach, and which in fact it cannot reach. It is the duty of such company to know that the contract can be fulfilled, or to fully acquaint intending passengers of the fact that uncertainty exists, and provide

therefor in the contract of carriage. It will not do to say that at the time the contract in this case was made the appellant did not know and had no means of finding out that the voyage could not be made, and then say it was excused because the condition of the season was such that the winter ice had not disappeared from the point to which it had agreed to carry its passengers; that the condition of the season was the act of God. Usual conditions of the seasons must be taken notice of. An act of God, to relieve from performance of a contract, must be such as reasonable prudence and foresight could not have guarded against. The fact that ice had not disappeared from the bay of Port Clarence when appellant arrived there cannot be held to be an act of God.

"The passenger, when he buys transportation of a company, must necessarily rely upon the company's information concerning the practicability and feasibility of the trip contracted for." *Smith v. North American T. & T. Co., supra,* p. 584.

"When the party by his own contract creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident or inevitable necessity, because he might have provided against it by his contract. This is founded in reason and authority." *Hand v. Baynes,* 4 Whart. 204 (33 Am. Dec. 54); *West v. The Uncle Sam,* 1 McAll. 505, 507; 3 Thompson, Commentaries on Negligence, § 3651.

It was the duty of the appellant to have informed respondent, at the time he purchased the tickets, of any uncertainty in the voyage, and to have contracted with reference thereto.

This brings us to a consideration of the contract of carriage. There was a clause in the ticket purchased by respondent, which was signed by both appellant and respondent, as follows:

"If the purchaser of this ticket cannot for any reason be safely landed at the port of destination upon arrival of the vessel thereat, he may be landed at the next port reached by the vessel upon the then voyage at which such landing can be safely made."

In reference to this clause the court instructed the jury as follows:

. "I charge you that under this form of contract the right of defendant to land passengers and freight at the next port reached by the vessel only arises upon the then voyage upon the arrival of the vessel at the port of destination; and if you find from the evidence that the steamship Oregon never arrived at said port of destination, or never proceeded further than the port of Nome, Alaska, then such finding cannot avail defendant as an excuse for failure to transport the plaintiff, his men and freight, to the point of destination named in said contract, to-wit, the port of Port Clarence, Alaska."

There can be no doubt that the instruction of the court is a literal construction of the clause in the contract. By this instruction the court, in effect, told the jury that the clause did not apply to this case, because it was conceded at the trial that the vessel did not proceed further than Nome. The excuse for not proceeding further was that it was impossible for her to reach that point at that time. The phrase "upon arrival of the vessel thereat" does not necessarily mean that the vessel must actually arrive and land at the point of destination, but means that, if the vessel or the passengers cannot be safely landed, the vessel may proceed to the next port where landing can be made. "The next port reached" clearly means the port beyond the place of destination reasonably near on the line of voyage. It certainly was not intended by this contract that the passenger may be landed at some intermediate port, and that such landing would be a compliance with the contract.

For example: If the vessel on her outward voyage had stopped at Victoria the first day out, and there learned that the ice accumulated during the winter season had not yet freed Port Clarence, the point of destination, so that the vessel could enter there, and if the port of Victoria was fifteen days distant from Port Clarence, but the nearest landing place thereto, no one would argue that the respondent, under this contract, could be landed at Victoria. The voyage from Seattle to Nome occupied sixteen days. It required one day more to reach Port Clarence. Nome was the last intermediate point on the outward voyage. When the vessel arrived at Nome, the voyage was there abandoned. We think the reasonable construction of the contract under consideration, and what the parties thereto evidently intended, was that, upon the arrival of the vessel at the point of destination, or near thereto, or at some intermediate place, where it was discovered that a safe landing of the passenger could not be made at the point of destination, then he may be landed at the next nearest point beyond the point of destination reasonably near, where landing may be safely made. It was not the duty of the appellant to attempt the impossible, or to go beyond Nome on a fruitless voyage. If it was a fact that the vessel could not possibly make the port of Port Clarence with safety to her passengers and herself, she was not compelled to attempt it. She was, however, compelled to proceed to the next safe landing beyond that point, or care for her passengers until she could land them at the point agreed upon. She could not abandon her voyage and compel her passengers to disembark at some intermediate point without their consent. For these reasons the instruction of the court that the contract did not apply to the facts in the case at bar, which was the effect of the instruction, was not error.

The controlling question in the case was a question of fact, viz., did the respondent elect to be landed at Nome? This was a question for the jury, and was properly submitted by a fair instruction, and the jury found upon it in favor of respondent.

Several exceptions are based upon instructions requested by appellant and refused by the court. The substance of part of these instructions was given, and, of those not given, it is sufficient to say that they were instructions which assumed the conditions prevailing at Port Clarence Bay to be an act of God, and, for the reasons heretofore considered, it was not error to refuse them.

When the motion for a new trial was filed, appellant requested an extension of time within which to file affidavits in support thereof. Several affidavits were also filed setting up newly discovered evidence. From these affidavits, it appears that, within a day or two after the trial, two of the persons whom respondent testified were in his employ came forward and denied that they were in the employ of the respondent on the trip north. They also stated that they were on the trip on their own account, and that respondent did not pay out any money for them. Two of them were in Seattle, where the trial was had, at the time thereof, and were not subpœnaed or called as witnesses. Appellant alleges in the affidavits that it did not know of these witnesses, and had no means of finding out before the close of the trial that they were in Seattle. Several months before the time of the trial, appellant propounded written interrogatories to respondent, one of which asked the names of these parties, and, in answer, respondent gave the names of the men, some of which names, however, were not correctly spelled. Respondent was not asked to give the addresses of these men. Appellant, at the time the question was propounded, had the

address of one of the men, viz., Mr. Groo.  If appellant had asked for the addresses of these parties and had not received them, there would, no doubt, have been cause for complaint.  It would certainly have been an easy matter to ask for the addresses as well as the names of the parties.  The addresses, it seems, would have been necessary to identify them, as well as to find them.  This omission shows such a want of diligence that we think it was not an abuse of discretion of the trial court in not extending the time for filing affidavits, and for the same reason it was not error to overrule the motion for a new trial.

The judgment is affirmed.

REAVIS, C. J., and ANDERS and DUNBAR, JJ., concur.