[No. 11696. Department One. April 25, 1914.]

ALASKA COAST COMPANY, *Appellant*, v. ALASKA BARGE COMPANY, *Respondent.*[1]

SHIPPING—CHARTER PARTY—INJURY TO VESSEL—BURDEN OF PROOF. In an action upon a charter party for breach of contract in failing to return the ship in good condition, the burden is upon the defendant to show that damages sustained were within the exemption of the contract excepting damages by an "act of God."

SAME—CHARTER PARTY—"ACT OF GOD"—WHAT CONSTITUTES. An "act of God" exempting a carrier from liability under a charter party must be through "inevitable accident," which no human agency could resist.

[1] Reported in 140 Pac. 334.

SAME—CHARTER PARTY—"ACT OF GOD"—EVIDENCE—SUFFICIENCY. A charterer fails to show, by the preponderance of the evidence, that an accident to a ship was through an "act of God," where it appears that the ship, while three miles from land, in the daytime, in clear weather, sustained a jar, as though it had struck some submerged object, in about 125 fathoms of water, and broke a propeller blade, and that no floating objects were seen; since the cause of the accident is left to speculation.

SAME—CHARTER PARTY—CONSTRUCTION—INSURANCE. Under a charter party, in which the owner agreed to carry stated insurance, and the charterer assumed the responsibility for all injuries sustained to the vessel not caused by the "act of God" or the enemies of the United States and not "covered by insurance," the owner was not its own insurer as to damages for which insurance could not be obtained.

SAME—CHARTER PARTY—INJURY TO SHIP—NEGLIGENCE—CONSTRUCTION. A charterer of a vessel having assumed responsibility for injuries sustained through accidents to the vessel, is liable therefor irrespective of negligence; and this would be true if the charter party was merely a bailment, since the contract fixes the respective duties of the parties.

Appeal from a judgment of the superior court for King county, Tallman, J., entered September 4, 1913, dismissing an action for breach of contract, after a trial on the merits to the court. Reversed.

*Richard Saxe Jones*, for appellant.

*William H. Gorham*, for respondent.

Gose, J.—This is an action upon a charter party, for damages to a steamboat, it being alleged that the charterer breached its contract in failing to return the boat in good condition.

The appellant, being the owner of the steamship "Jeannie," chartered it to the respondent for voyages from Puget Sound to ports in southeastern Alaska. The charter party provides that the vessel should be delivered to the respondent "unmanned and without a crew;" that the owner should carry insurance on the steamship "not to exceed $27,000," in some insurance company satisfactory to it, for which the

charterer agreed to pay at the rate of fifteen per cent per annum, plus additional short rate charges if the policy should be canceled, for such time as the boat should be engaged in the service of the charterer; that the owner should select a chief engineer for the operation of the steamship during the full term of the charter, but that the master and pilot were to be selected by the charterer and should be satisfactory to the owner. It was further agreed that the owner should not be liable,

". . . for the operation, maintenance and control of said steamship, but the same is fully assumed by the party of the second part [the respondent], except that, if such steamship is not properly cared for by the party of the second part in accordance with the views and opinions of the chief engineer acting with either the master or pilot, then party of the first part may immediately cancel this charter and retake possession of said steamship. . . . It is further agreed that party of the second part will return said steamship 'Jeannie' to party of the first party upon the expiration of this charter, or any extension thereof, in as good condition as she is received, natural wear and tear and the act of God or the enemies of the United States of America excepted; but that if party of the first part shall receive from insurance placed upon said steamship by party of the first part, any sum or sums arising from any cause covered by such insurance, then the sum so received by party of the first part shall be deducted from any claim of loss, damage or injury for which party of the second part would be liable under this clause. . . . In the event that said steamship shall meet with any accident for which insurance is thereafter collected, then the amount of insurance so collected by party of the first part and retained by them, shall be the full and true measure of all damage or loss sustained, and no claim shall be made on parties of the second part by party of the first part for loss or damage to said ship by reason of any accident happening thereto which is covered by insurance."

After the Jeannie was turned over to the respondent, it struck some unknown, submerged object in Frederick Sound, in Alaskan waters, threw a propeller blade, and was other-

wise damaged.  The ship was returned to appellant in damaged condition, and this action is brought to recover the amount of such damages.  The appellant took out the required amount of insurance, but it is conceded that the damages sustained are not recoverable under the policies.  The respondent paid the premium upon the policies in harmony with its agreement.

The first question to be considered is, Was the accident which caused the damage an "act of God?"  The burden of proof was upon the respondent to show that the injury sustained was caused by an "act of God," in order to excuse itself from liability under this clause of the charter.  *Merritt v. Earle*, 29 N. Y. 115, 86 Am. Dec. 292; *The Majestic*, 166 U. S. 375; *McKinley v. C. Jutte & Co.*, 230 Pa. St. 122, 79 Atl. 244, 1912 A. 452; *Ewart v. Street*, 2 Bailey (S. C.) 157, 23 Am. Dec. 131; *McArthur v. Sears*, 21 Wend. (N. Y.) 190; *New Brunswick Steamboat & Canal Transp. Co. v. Tiers*, 24 N. J. L. 697, 64 Am. Dec. 394; *Klair v. Wilmington Steamboat Co.*, 4 Penn. (Del.) 51.

In *Ewart v. Street, supra*, it is said:

"It was rightly said on the part of the plaintiffs, that it is enough to show the damage done, in order to render the defendants liable; and the burden is on them to show, that it was occasioned by such a cause, as will exempt them from liability."

In *McArthur v. Sears, supra*, the court said:

"The defendant was a common carrier; and it is not denied as a general rule, that, to protect himself from responsibility for the loss, he was bound to prove that it arose from the act of God, or the enemies of the country."

In *Merritt v. Earle, supra*, the term "act of God" is thus defined:

"The law adjudges the carrier responsible, irrespective of any question of negligence or fault on his part, if the loss does not occur by the act of God or the public enemies.  With these exceptions, the carrier is an insurer against all losses.

The expressions 'act of God' and 'inevitable accident' have sometimes been used in a similar sense, and as equivalent terms. But there is a distinction. That may be an 'inevitable accident' which no foresight or precaution of the carrier could prevent; but the phrase 'act of God' denotes natural accidents that could not happen by the intervention of man —as storms, lightning, and tempest. The expression excludes all human agency. In the case of the *Trent Proprietors v. Wood*, (4 Douglass 287), Lord Mansfield said: 'The general principle is clear. The act of God is natural necessity—as winds and storms—which arise from natural causes, and is distinct from inevitable accident.' The same judge, in *Forward v. Pittard*, (1 Term Rep. 27), defined the 'act of God' to be something in opposition to the act of man —adding 'that the law presumes against the carrier, unless he shows it was done by such an act as *could* not happen by the intervention of man—as storms, lightning, and tempest.' " (The italics are ours.)

Substantially the same definition is given in *Polack v. Pieche*, 35 Cal. 416, 95 Am. Dec. 115. In *Reaves v. Waterman*, 2 Speers' Law 197, 42 Am. Dec. 364, it is said:

"The act of God is commonly illustrated by such natural convulsions as tempests, lightning, earthquakes, the unknown shifting of shoals, and the like."

In *Fergusson v. Brent*, 12 Md. 9, 71 Am. Dec. 582, it is said:

"It is true that every 'act of God' is an inevitable accident, because no human agency can resist it; but because it is so, it does not therefore follow, in the sense of the books, that every inevitable accident is an act of God. Damage done by lightning is an inevitable accident, and also an act of God; but the collision of two vessels in the dark is an inevitable accident, but not an act of God, such as the stroke of lightning; nor is it so considered by the authorities."

In 1 Cyc. 758, in a foot note, it is said that in numerous cases the courts have expressed the opinion that the words "inevitable accident" and "unavoidable accident" are exactly equivalent to the expression "act of God." "This is not

strictly true, however, for while every act of God is an inevitable accident every inevitable accident is not an act of God." In *Blythe v. Denver & R. G. R. Co.*, 15 Colo. 333, 25 Pac. 702, 22 Am. St. 403, 11 L. R. A. 615, it is said: ". . . there is a legal distinction between 'inevitable accident' and the 'act of God.'" In *McKinley v. C. Jutte & Co., supra,* it is remarked that the terms "inevitable casualty or accident" and "acts of God" are not synonymous. "Inevitable casualty" is a broader and more comprehensive term than "act of God." In *Hale v. New Jersey Steam Nav. Co.,* 15 Conn. 539, 39 Am. Dec. 398, it is said:

"If the defendants are common carriers, the question must be merely what are the liabilities of common carriers? The answer is, for all losses, even inevitable accidents, except they arise from the act of God, or the public enemy."

These cases are not in conflict with *Smith v. North American Transp. & Trad. Co.,* 20 Wash. 580, 56 Pac. 372, 44 L. R. A. 557, and *Bullock v. White Star Steamship Co.,* 30 Wash. 448, 70 Pac. 1106. Nor are they opposed to the rule announced in *The Majestic,* 166 U. S. 375, cited by the respondent, where the court said:

"The burden in this respect is on the carrier. *Clark v. Barnwell,* 12 How. 272; *Transportation Company v. Downer,* 11 Wall. 129; *The Edwin I. Morrison,* 153 U. S. 199; *The Caledonia,* 157 U. S. 124. The act of God, said Chancellor Kent (Vol. 2, p. 597), means 'inevitable accident, without the intervention of man and public enemies'; and again (Vol. 3, p. 216), that 'perils of the sea denote natural accidents peculiar to that element, which do not happen by the intervention of man, nor are to be prevented by human prudence. A *casus fortuitus* was defined in the civil law to be, *quod damno fatali contingit, cuivis diligentissimo possit contingere.* It is a loss happening in spite of all human effort and sagacity.' The words 'perils of the sea' may, indeed, have grown to have a broader signification than 'the act of God,' but that is unimportant here. Judge Shipman in the Court of Appeals quotes from 1 Parsons on Shipping 255, the definition there given of the 'act of God,' and the reason

for it, as follows: 'The act of God is limited, as we conceive, to causes in which no man has any agency whatever; because it was intended never to raise, in the case of the common carrier, the dangerous and difficult question whether he actually had any agency in causing the loss; for, if this were *possible*, he should be held.' "

Nor are they opposed to the rule announced in *New Brunswick Steamboat & Canal Transp. Co. v. Tiers*, 24 N. J. L. 697, 64 Am. Dec. 394, cited by the respondent, where the court said:

"By the act of God is meant a natural necessity, which could not have been occasioned by the intervention of man, but proceeds from physical causes alone, such as the violence of the winds or seas, lightning or other natural accident. If the loss happen by the wrongful act or neglect of a third person, the carrier is responsible, and is to seek redress from the wrongdoer. If divers causes concur in the loss, the act of God being one, but not the immediate or proximate cause, such act of God does not discharge the carrier. To have this effect, it must be one exclusive of human agency."

The facts touching the cause of the accident are these: The chief engineer testified:

"I know she struck something hard, something submerged, and broke one of the blades and put everything out of line. . . . She gave a sudden stop and then started off. . . . Struck something submerged. I don't know whether it was a log or a chunk of ice or it might have been a rock."

The master of the ship testified that the accident happened in the middle of Frederick Sound, three miles from land, in about 125 fathoms of water, in clear weather, with the sea "smooth as glass." He further said:

"I felt a jar but you can feel a jar when a ship loses a blade. It might be a submerged body; it probably was; I don't know. I want to say that I don't know. I just felt the jar."

The accident happened in the month of September, in the day time. It was stipulated that the chief mate would, if

called as a witness, testify that he was watch officer on the bridge at the time of the accident, and that he did not see or hear of any floating objects at or near that time. The testimony does not show whether icebergs were to be anticipated at the time and place of the accident.

This is far from showing that the act could not have happened by the intervention of man. It leaves the cause of the accident to speculation. The most that can be said is that it may have been caused by an "act of God," or it may have been caused by the act of man. We are not required to adopt the strict rule laid down by Judge Shipman and quoted in the excerpt from *The Majestic, supra,* viz., that if it were *possible* that the injury was caused by the act of man the respondent should be held. Under the authorities, it is at least required to show, by a preponderance of the evidence, that an "act of God" was the cause of the injury. In this, it has signally failed. Nor are we willing to adopt the respondent's view that, because it may have been an inevitable accident or casualty, it was an "act of God."

The respondent next contends that, under the charter party, the appellant was its own insurer. The charter party is not susceptible of this construction. When taken as an entirety, the view is compelling that the respondent assumed responsibility for all injuries sustained to the vessel not caused by "the act of God or the enemies of the United States of America," and not "covered by insurance." The testimony is that the appellant procured the highest and best form of insurance obtainable. The charter shows that it was clearly in the minds of the parties that the boat might sustain an injury not covered by the exception clause and not covered by the insurance. The responsibility for such damages was assumed by the respondent. While it is true the appellant furnished the chief engineer, it is also true that the respondent assumed control of the vessel.

It is also argued that there can be no recovery without proof of negligence upon the part of the respondent, because

it is said that the respondent was only a bailee. The authorities to which we have referred show that this position is untenable. Moreover, if we assume that the charter party was a bailment, the respective duties are fixed by contract, and the respondent's liability must be measured by that instrument. *Patterson v. Wenatchee Canning Co.*, 59 Wash. 556, 110 Pac. 379. In that case we said: "A special contract of bailment prevails against general principles of law applicable in the absence of an express agreement."

If respondent breached its contract, it is liable, and it can only excuse itself from liability by showing either that the damages were caused by an act of God or covered by the insurance, or probably—but this is not before us under the evidence—that the appellant, had it exercised reasonable care, could have procured insurance which would have covered the damage. The evidence here, however, is that such insurance could not have been obtained. We think, under the law and the evidence, the appellant is entitled to recover the damages the vessel sustained.

The case will be remanded, with directions to the trial court to ascertain the damage and enter judgment for the amount thereof.

CROW, C. J., ELLIS, MAIN, and CHADWICK, JJ., concur.