## W. J. LAUGHREN v. M. W. BARNARD.[1]

July 28, 1911.

Nos. 17,130,—(228).

**Contract for hire of horses construed.**

A written contract, by which plaintiff leased or hired to defendant certain horses for a specified term, construed, and *held* to have imposed upon defendant an absolute obligation to return the horses to plaintiff in as good condition as when received, and not as creating an ordinary bailment, imposing upon defendant the exercise of reasonable care.

**Same — measure of damages.**

The measure of damages for the breach of such a contract by a return of the horses in an injured and damaged condition, whether the injury be permanent or temporary, is the difference between the value of the horses when delivered and their value when returned, the diminution in value, if any, being caused by the injury, and not the natural decline in the market value.

**Assignments of error.**

Assignments of error considered, and *held* to present no ground for reversal.

Action in the district court for St. Louis county to recover $1,-538 for breach of contract. The answer admitted the execution of the contract set forth in the opinion; denied that the horses were

[1] Reported in 132 N. W. 301.

sound and in good working order at the time they were delivered to defendant or that they were worth $3,500, but alleged that at the time they were delivered many of them were poor and run down and none of them were in first class condition, and alleged that they were not worth more than $2,000; denied that he abused the horses, or overworked them in any manner, or underfed them, or allowed them to be abused, overworked or underfed, and denied that any of them were injured by lack of care or by abuse; admitted that one of the horses died while in his possession and alleged that the horses and harnesses were in no worse condition when they were returned than at the time they were received by defendant. The reply was a general denial. The case was tried before Ensign, J., and a jury which returned a verdict in favor of plaintiff for $900. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, he appealed. Affirmed.

*R. J. Powell,* for appellant.

*Fryberger & Fulton,* for respondent.

BROWN, J.

In May, 1909, plaintiff leased or hired to defendant seven teams of horses, with equipment, to be employed by the latter in certain railroad grading work; the term of bailment expiring August 1, 1909. One of the horses died while in defendant's possession, and the others were returned to plaintiff in a damaged and injured condition, caused, as alleged by plaintiff, by mistreatment by defendant. The action was brought to recover damages for the failure of defendant to comply with the contract. Plaintiff had a verdict, and defendant appealed from an order denying his alternative motion for judgment or a new trial.

The contract between the parties was in writing and in the following language:

"I, W. J. Laughren, Bayfield, Wis., hire to M. W. Barnard, Dewey, Wis., 7 teams for R. R. work at Dewey, Wis., and to receive the rate of $30.00 per month each team and found from the time Mr. Laughren ships until received from Mr. M. W. Barnard. Said horses to be returned to Mr. W. J. Laughren August 1, 1909. Said

horses and harness to be returned in same condition as received or as good. Transportation to be free both ways. By Mr. M. W. Barnard, for said stock, it is further agreed that said horses shall be properly fed and cared for and not overworked."

1. The trial court construed the contract as imposing upon defendant the unconditional obligation of returning the horses in as good condition as when received by him, and so instructed the jury. Defendant contends that in this the court erred, and that, properly construed, the contract was one of ordinary bailment, imposing upon defendant reasonable care in the treatment of the horses, and that in the absence of a showing of negligence no recovery could be had, though the horses were not in as good condition when returned as when received. This contention is based upon the last clause of the contract, by which defendant agreed to properly feed and care for the horses.

The contract, evidently drawn by one of the parties, though not as perfect as it might have been, had a form book been consulted or a lawyer employed, sufficiently expresses the agreement of the parties, and is to be construed to give effect to their intention. The clause thereof imposing on defendant the obligation to return the horses in as good condition as when received, and the clause requiring proper treatment, are, in a legal sense, perhaps somewhat conflicting. The first portion referred to requires unconditionally a return in good condition, while the last clause may be said to require, as a matter of law, reasonable care in their treatment. Neither clause, however, should be rejected, but effect given to both, and by construing the whole writing together the intention of the parties ascertained. It is quite clear that the intention was to require a return of the horses in good condition, and by transposing the writing that purpose is made clear and manifest. It should be construed as though it read: "Said horses shall be properly fed and cared for, and not overworked, and be returned in the same condition as received, or as good."

Such was the view of the learned trial court, in which we concur. The defendant then obligated himself, not only to take proper care of the horses, but to return them in the condition in which he received

them. That the contract, so construed, is valid, there can be no question under the authorities. Grady v. Schwenler, 16 N. D. 452, 113 N. W. 1031, 125 Am. St. 674, 14 L.R.A.(N.S.) 1089, and cases cited in the note. While the complaint alleged, in effect, negligence in the treatment of the horses, the contract imposed an absolute liability, which was not thereby waived. It was probably unnecessary to allege the reason why the horses were in poor condition when returned, but the presence of such allegation did not deprive plaintiff of the right to enforce the contract liability.

2. The horses, when returned, were alleged not to have been in the same condition as when delivered to defendant; on the contrary, that they had been abused while in defendant's care, had been underfed, not properly cared for, and overworked, in consequence of which one of them died, and the others were returned in poor, lame, and weak condition, wholly unfit and unable to work, and greatly depreciated in value; that when delivered to defendant they were worth over $3,500, but when returned they were worth no more than $2,000. Plaintiff offered evidence tending to support these allegations, and of the diminished value of the horses when returned, and the court instructed the jury that the difference in value was the measure of plaintiff's damages. It is contended by defendant that the court erred in so charging the jury, and this presents the subject-matter of the ninth and tenth assignments of error.

The general rule of damages applicable to the injury of property by a person in possession thereof, who is under contract obligation to return the same to the owner in as good condition as when received, is the diminution in the value resulting from the injury. The contract is one of insurance, and the rule is illustrated in the case of a common carrier of personal property for hire. New York, L. E. & W. R. Co. v. Estill, 147 U. S. 591, 13 Sup. Ct. 444, 37 L. ed. 292. In the case at bar defendant was under an absolute obligation to return the horses to plaintiff in as good condition as when received, and there was a breach of that obligation. The evidence was sufficient to justify the jury in finding that, when returned, they were greatly reduced in value because of neglect or mistreatment at the hands of defendant. Under the general rule stated, this re-

duction in value represented the damage suffered by plaintiff. Flakne v. Great Northern Ry. Co. 106 Minn. 64, 118 N. W. 58; Southern Express Co. v. Fox, 131 Ky. 257, 115 S. W. 184, 117 S. W. 270, 133 Am. St. 241; 4 Sutherland, Damages, § 1101, and cases cited. What the law seeks in such cases is to award full compensation, but compensation only, and it is probable that in the case of an injury to property, which is merely temporary and readily remedied, and the cost and expense thereof, together with the value of the use of the property in the meantime, would be less than the difference in value, the defendant, in mitigation of damages, might be entitled to show the facts, and thus reduce his liability. But in the absence of some such showing the difference in value represents the true test of liability. Davidson v. Michigan Central, 49 Mich. 428, 13 N. W. 804.

It is true that the owner of the property, where the injury is temporary, may proceed on the theory of special damages, and recover, instead of the difference in value, the cost and expense of restoring the property to the condition when delivered to defendant. Keyes v. Minneapolis & St. Louis Ry. Co. 36 Minn. 290, 30 N. W. 888. But he is not required to so proceed. His cause of action accrues in such case immediately upon the breach of the contract, and the breach occurs when the property is returned in a damaged condition, and he is not required to delay bringing suit, to the end that the expense of restoring the property may be ascertained. The rule awarding the difference in value applies, whether the injury to the property be temporary or permanent. The case of Keyes v. Minneapolis & St. Louis Ry. Co. supra, is not in conflict with this view of the law. That case involved general damages for permanent injury, the difference in value, and also special damages for expenses incurred in attempting to restore to its original condition the horse there alleged to have been injured by defendant. The opinion does not attempt to lay down a general rule in actions of this kind.

3. The horses were delivered to defendant on May 17, and returned in August. Defendant called as a witness a veterinary surgeon, who examined them on June 19, and sought to show the opinion of the witness as to their value on that day. The opinion was excluded on the ground that no foundation had been laid. We discover

no error in this ruling. Whether a sufficient foundation is laid for the introduction of opinion evidence rests in the discretion of the trial court, in the exercise of which we find no error. The question involved in the action was the value of the horses when delivered to defendant in May, and their value when returned in August. The opinion of the witness, as to their value in June, would not seem of sufficient importance to justify a reversal, even if a proper foundation had been laid.

All other assignments have been considered, with the result that no reversible error has been found.

Order affirmed.