[No. 15135. Department One. February 13, 1919.]

GEORGE C. BRATT, *Appellant*, v. C. L. POOLE *et al.,*
*Respondents.*[1]

BAILMENT (3, 8)—ACTIONS—DAMAGES—DEFENSES. Under a lease of a donkey engine requiring the lessees to accept it in its present condition and return it in as good condition, plus any betterments that might be placed upon it, it is inadmissible, in defense of an action for rent and damages, to show the lessees' cost of repairs and betterments, and that they discarded it because too expensive to keep up.

Appeal by plaintiff from a judgment of the superior court for Pierce county, Card, J., entered March 30, 1918, upon the verdict of a jury rendered in favor of the plaintiff, in an action for damages and for the rental of a donkey engine. Reversed.

*Peer & Eisenhower,* for appellant.
*Ralph Woods,* for respondents.

TOLMAN, J.—In January, 1916, appellant leased to respondent Poole and one Powell a donkey engine for use in logging operations. The lease was in writing, duly signed, the term was seven months, and the lessees were bound to accept the engine "in present condition," to pay a rental of $75 per month in advance, and to return the engine, within ten days after the termination of the lease, to any place designated by

[1]Reported in 178 Pac. 638.

lessor within fifty miles of the city of Tacoma "in as good order and condition as the same is now, or may be put into (reasonable use and wear thereof excepted)." It is admitted that, after the expiration of the term described in the written lease, it was orally agreed that respondents should continue to keep possession of and use the engine, under the terms of the written lease, for a further period. Appellant contends that respondents so continued to hold and use the engine, and did not return it to him in Tacoma until July 17, 1917, at which time the engine was, according to appellant's theory, returned in very bad condition, with numerous vital parts missing or broken, all the way from the grates and ash pan up to the spark arrester, and with the rental accruing after November, 1916, wholly unpaid; while respondents contend that they finished using the engine on December 12, 1916, so notified appellant or his agent, asked for directions for its return, and were requested to leave the engine in the woods until called for, as appellant had a prospective purchaser for it who was operating in the vicinity where the engine then was.

Whatever demands or requests were or were not made for the payment of the rental, or for the return of the engine prior thereto, it seems to be admitted that the return of the engine was demanded in June, 1917, and that the delivery in July was in response to appellant's requests or orders. The engine was shipped to Tacoma by rail, loaded on a flat car. It stood on the car in the Tacoma yards for some days, where it was seen by appellant and his agent, was finally unloaded at respondents' expense at the place designated by appellant, and some time thereafter appellant appears to have called respondents' attention to some missing parts, whereupon respondent

Poole replied that some parts had been taken off and boxed for shipment, which parts he would endeavor to locate and return. Some weeks or months after the return of the engine, appellant, in proceeding to put the engine in condition for sale or further use, claims to have discovered, by means of skilled workmen who examined it with a view to making repairs, that it would cost $731.57 to supply the parts which are claimed to have been missing or broken and to put the engine in condition to be used, and failing to obtain an adjustment with respondents, this action was brought to recover $525 rental, claimed to have accrued for the months from December, 1916, to June, 1917, both inclusive, and for damages to the engine beyond ordinary wear and tear in the amount claimed necessary to make the repairs, as hereinabove stated.

Answering the complaint, respondents denied the allegations as to damaging the engine and as to the missing parts, except some small items aggregating $25.50 in value, which sum, with accrued costs, was tendered and brought into court; and also pleaded that their use of the engine ceased on December 12, 1916, except for one week at a later period, when they used it with appellant's consent and paid for such use, that the rental had been fully paid for the time that the engine had been in use, and that it remained in their possession thereafter at the request of appellant; that, during such time, they were gratuitous bailees only and held the property for the sole benefit of appellant, the bailor. The case was tried to a jury, which brought in a verdict for the amount tendered only, and a judgment was entered thereon, from which this appeal is taken.

Appellant assigns a number of errors, only one of which we deem it necessary to discuss at any length.

When respondent C. L. Poole was on the witness stand, and after he had testified that, when he received the engine, it was apparently all right, but that they had continual trouble with it all the time they were using it, he was asked by his counsel: "Q. How much did you expend on it trying to keep it in shape?" To which an objection was interposed. The court, apparently misunderstanding the question, said:

"Of course the amount is immaterial, but that they gave it care, I think it bears on that. He may answer."

Then followed testimony in which, after refreshing his recollection by looking over bills and memoranda, the witness was permitted to say to the jury, not only that he had purchased various parts to be put on the engine while it was being operated under the lease, but that he had expended between three and four hundred dollars in purchasing such parts, and, in addition, had incurred a large and indefinite expense for labor and extra time of men employed after working hours and on Sundays in repairing the engine, and that finally he had discarded its further use because it was too expensive to keep up.

The rights of bailor and bailee are controlled by the written contract, where one exists, and they may impose upon each other any terms they may choose. 6 C. J. 1110. The bailee is liable upon an express covenant of a written contract to return the property in good condition, or as it was at the time of hiring. 6 C. J. 1112; *Robertson v. Plymouth Lum. Co.*, 165 N. C. 4, 80 S. E. 894; *Direct Nav. Co. v. Davidson*, 32 Tex. Civ. App. 492, 74 S. W. 790.

Respondents had, by their written agreement, accepted the engine "in present condition," which condition they were bound to know when they executed

the lease and received the property thereunder; and they were thereby bound to return it in as good condition as when received, plus any betterments they might place upon it, "reasonable use and wear thereof excepted." While testimony generally, to the effect that the engine was kept in repair while being used by respondents, might be admitted as bearing upon its condition upon December 12, 1916, in the event the jury should find that the lease ceased on that day and that respondents were in possession thereafter only at appellant's request and for his benefit, we cannot conceive of any theory upon which the cost of such repairs should be detailed to the jury, or the jury told that the further use of the engine was discarded because the machine was too expensive to keep up. It is obvious that such testimony would almost certainly tend to prejudice the jury against appellant's claim for damages to the engine, and the extent to which the evidence referred to is reflected in the verdict, we cannot now determine. The only issue upon this branch of the case was, what was the condition of the engine when the lease began, and what was its condition when it ended? The testimony complained of had no tendency to establish either. The trial court had the true rule in mind when he said: "Of course the amount is immaterial, but that they gave it care . . .," and should have limited the testimony on this point to general evidence tending to show only that the engine was kept in repair and was in such repair when the lessees' use of it ceased; and, of course, should not have permitted the witness to testify as to his reason for discontinuing its use, as that evidence tended directly toward overturning the express terms of the written contract, or inviting the jury to disregard those terms.

The court properly instructed the jury, and the so-called inconsistencies complained of resulted from the necessity of instructing as to the law applicable to the facts as contended for by each of the parties, which contentions, of course, are inconsistent with each other.

As our conclusion upon the point discussed requires a reversal of the case, the other errors assigned need not be referred to, further than to say that the conduct of counsel in addressing the jury, upon which error is assigned, is not likely to occur upon another trial, and therefore has not been considered. ·

The judgment appealed from will be reversed, and the cause remanded with instructions to grant a new trial.

CHADWICK, C. J., MAIN, MACKINTOSH, and MITCHELL, JJ., concur.