[No. 32247.   Department Two.   March 5, 1953.]

METROPOLITAN PARK DISTRICT OF TACOMA, *Appellant*, v.
OLYMPIA ATHLETIC CLUB, INC., *et al.*, *Respondents.*[1]

*Leo Teats*, for appellant.

*J. T. Trullinger* and *O'Leary, Meyer & O'Leary*, for respondents.

FINLEY, J.—The plaintiff park district rented bleacher seats to the defendants for use by the latter in connection with professional wrestling exhibitions. The bleachers, apparently through no negligence of the defendants, were

[1]Reported in 254 P. (2d) 475.

destroyed by fire. The contract of bailment between the parties was evidenced by a letter, written by the defendants to the plaintiff, in confirmation of the rental agreement between the parties.

Plaintiff sued the defendants to recover the value of the bleachers. The latter interposed a demurrer. It was sustained by the trial court, and plaintiff's complaint was dismissed with prejudice.

The question to be decided here is whether the defendants, under their letter of confirmation as set forth in plaintiff's complaint, became insurers and subject to an absolute liability for the destruction of the bleachers.

The defendants' letter of confirmation reads, in part, as follows:

"This will confirm our conversation regarding bleachers to be used at the Olympic Sports Center by the Olympic Athletic Club. It was agreed that Charlie Funk would install the bleachers and instruct the men who will handle them from now on in correct proceedure in erecting and taking down. *We also agree to use every possible care in handling them and to replace any parts damaged while in our possession and to return them in the same condition in which we received them. We have checked with our insurance company and our liability covers the new location as well as where we formerly showed. We are insured in the Hartford Accident and Indemnity Co. through Walter Draham and Co. in Olympia.*" (Italics ours.)

▪ The general rule is that the intention of the parties, ascertained from the wording of the contract, the subject matter of the bailment, and the circumstances of the parties, is controlling and determines whether an absolute contractual liability has been assumed. 6 Am. Jur. (Rev. ed.) 165, 299, § 182.

▪ If the subject matter of the bailment is destroyed without fault or negligence on the part of the bailee, any liability on his part for the loss must arise out of the contract of the parties and the relationships established thereby. In other words, in the absence of negligence, any recovery by the bailor must be founded upon contract. Of course, when a bailee is negligent, a bailor may seek recovery in a

tort action; however, no such question is involved in the instant case.

When personal property is destroyed, the loss must fall somewhere. It is where property is destroyed when in the possession and under the control of a bailee that some confusion in thinking, feelings, or emotions may arise. But if thinking be pin-pointed along legal lines in terms of the possible legal relationships of the parties to a bailment, only two questions need be answered: (a) Was the bailee negligent? (b) Was there a contractual duty or responsibility on the part of the bailee?

In view of the foregoing, our problem seems quite simple. All we have to determine is whether or not the bailee contracted to become an insurer as to the bailed property. But, with the stating of this problem, trouble arises immediately. In entering into an agreement, the parties used certain language. We have a problem, and a real one, in determining the meaning of the language used. Where the phrases, "in good condition," or "in as good condition as when received," or similar expressions, have been used in contracts of bailment, the decisions of other jurisdictions are in disagreement as to the meaning and effect of the indicated language. In 150 A. L. R. 277, it is said:

"There is a conflict in the authorities as to whether an express undertaking by a hirer of personal property to return the same 'in good condition,' 'in as good condition as received,' or undertakings of similar import, bind him absolutely as to the redelivery, or whether such redelivery is excused by act of God, inevitable accident, or other injurious acts occurring without his negligence. Both groups of decisions, those which hold the bailee's liability to be the same as under the common law and those which hold that his liability has become absolute by his express promise to return the bailed property in a specified condition, base their conclusions on exactly the same ground, namely, the alleged intention of the parties to the contract of bailment. Unfortunately, a close analysis of the cases as to the particular wording of the contract involved, the surrounding circumstances, and the subject of the bailment in each particular case does not disclose any distinction which would explain, much less warrant, the differences in the results."

In the case at bar, the letter of the bailee, supposedly confirming the agreement between the parties, employs the phrase, "in the same condition as we received them." Unquestionably, there is a conflict in the authorities as to the meaning and effect of this phrase when used in a bailment contract. In 150 A. L. R. 280, the annotator states that the language in question has been held to create no absolute or insurer's liability; however, the annotator proceeds, by saying:

"But the opposite result has been reached in the following cases, which stand for the rule that the promise of the bailee to return the subject of the bailment to the bailor *'in good condition,'* or *'in as good condition as received,'* *indicates a sufficient intention of the parties to enlarge the bailee's common-law liability to that of an insurer.* [citing cases]" (Italics ours.)

In the case at bar, we are not faced with the problem, solely, of whether the use of the particular phrase, "in the same condition as we received them," amounted to a covenant of absolute liability, or insurance, because the bailee's letter of confirmation, in addition to stating that the bleacher seats would be returned "in the same condition as we received them," stated, "We also agree to use every possible care in handling them and to replace any parts damaged while in our possession." The letter further stated:

"We have checked with our insurance company and our liability covers the new location as well as where we formerly showed. We are insured in the Hartford Accident and Indemnity Co. through Walter Draham and Co. in Olympia."

With reference to a provision in a rental contract that a boat would be returned "in as good condition as she was when plaintiff delivered her to the company," the court, in *Direct Nav. Co. v. Davidson,* 32 Tex. Civ. App, 492, 74 S. W. 790, said:

"If the contract was as alleged by plaintiff, it differed materially from an ordinary contract of bailment, and the rights and obligations of the parties are to be determined by the special contract, and are not such as the law would raise and impose in the absence of an express agreement."

The court further said:

"If the contract was such as was alleged and testified to by plaintiff, then defendant's obligation to return the boat to him in as good condition as when received was absolute, and could not be avoided by the act of God, the public enemy, or any vis major."

In *Laughren v. Barnard*, 115 Minn. 276, 132 N. W. 301, a team of horses had been rented under an agreement "to be returned as received, or as good." Discussing the question of absolute or an insurer's liability, the Minnesota supreme court said:

"The trial court construed the contract as imposing upon defendant the unconditional obligation of returning the horses in as good condition as when received by him, and so instructed the jury. Defendant contends that in this the court erred, and that, properly construed, the contract was one of ordinary bailment, imposing upon defendant reasonable care in the treatment of the horses, and that in the absence of a showing of negligence no recovery could be had, though the horses were not in as good condition when returned as when received. . . .

"The contract, evidently drawn by one of the parties, though not as perfect as it might have been, had a form book been consulted or a lawyer employed, sufficiently expresses the agreement of the parties, and is to be construed to give effect to their intention."

In a further reference to the contract, the court said:

"The defendant then obligated himself, not only to take proper care of the horses, but *to return them in the condition in which he received them*. That the contract, so construed, is valid, there can be no question under the authorities. . . . *the contract imposed an absolute liability*, . . . It was probably unnecessary to allege the reason why the horses were in poor condition when returned, but the presence of such allegation did not deprive plaintiff of the right to enforce the contract liability." (Italics ours.)

In *Ikola v. Snoqualmie Falls Lbr. Co.*, 12 Wn. (2d) 341, 345, 121 P. (2d) 369, we indicated:

" 'It is the accepted rule that, for the purpose of determining the effect of a pleading, its allegations must be liberally construed, to the end that substantial justice may be accom-

plished between the parties concerned. Rem. Rev. Stat., § 285 [P. C. § 8369]; *Isaacs v. Holland*, 4 Wash. 54, 29 Pac. 976; *Johnson v. Berg*, 151 Wash. 363, 275 Pac. 721. Accordingly, we have consistently held that, on demurrer, a complaint will be construed liberally, in favor of the pleader, in determining whether or not a cause of action reasonably can be inferred from the averments of the pleading.' *Lidral Construction Co. v. Parker*, 9 Wn. (2d) 128, 113 P. (2d) 1022."

■■ Bearing in mind the principle outlined in the immediately preceding quotation as to the construction of pleadings attacked by a demurrer, and viewing the bailee's letter of confirmation as a whole, without lifting particular words or phrases out of context, it is our opinion that the letter recognized a duty beyond that of common-law bailment, amounting to an insurer's liability, and that the plaintiff has alleged something more than just a common-law bailment.

The order of the trial court dismissing the complaint is reversed.

GRADY, C. J., SCHWELLENBACH, and HAMLEY, JJ., concur.

DONWORTH, J. (dissenting)—While I recognize that the authorities are divided on the question presented in this case (see note in 150 A.L.R. 277, quoted in the majority opinion), I cannot find in the language used in the letter written by the Olympia Athletic Club, when viewed in the light of the surrounding circumstances, an intention to insure the bleachers against any and all hazards whatever, regardless of negligence.

Respondents agree "to use every possible care in handling" the bleachers and to return them in the same condition as they received them. It seems to me that if it had been the intention of the parties that respondents were to insure the bleachers against such hazards as fire, earthquake, hurricane, acts of God and the public enemy, specific provision would have been made to that effect in their letter.

Apparently, this court has not been called upon to interpret language similar to that used in this case. Our decisions in *Alaska Coast Co. v. Alaska Barge Co.*, 79 Wash.

216, 140 Pac. 334; *Bratt v. Poole*, 105 Wash. 565, 178 Pac. 638; and *Locomotive Exchange v. Rucker Brothers*, 106 Wash. 278, 179 Pac. 859, 184 Pac. 848, to the extent that they have bearing on our problem, indicate a trend contrary to the majority opinion.

In *Cary-Davis Tug & Barge Co. v. Fox*, 22 Fed. (2d) 64, the circuit court of appeals for the ninth circuit, the defendants had contracted to install two water tanks in plaintiff's tug. A fire which was held to be due to causes beyond the defendant's control damaged the tug during the progress of the work. The agreement between the parties included the following provision:

" 'The whole job will be completed by the contractor and the tug returned to the owners in as good condition as it is to-day. Any parts removed by the contractor in order to do this work will be replaced by him. If the contractor by any chance damages the tug in the performance of this work, the damage will be righted by the contractor.' "

In disposing of the contention that the defendants were liable even though not negligent, Judge Rudkin, speaking for the court, said:

"Nor is there any merit in the contention that the appellees are liable, regardless of negligence, under the terms of the contract. No doubt a bailee may enlarge his liability by contract, but the provision that the tug should be returned in as good condition as it was that day is a familiar one in leases, charter parties, and other contracts, and almost without exception the courts have held that such provisions are simply declaratory of the obligation implied by law."

I think that the letter written by the respondents in this case is merely declaratory of the bailee's obligation to use reasonable care in the preservation of the bleachers and cannot be interpreted as imposing upon the bailee the obligation of an insurer against fire or other similar risks. Since the complaint contained no allegation of negligence upon the bailee's part, the demurrer was properly sustained.

The judgment should be affirmed.

---

March 31, 1953. Petition for rehearing denied.