[No. 33003. *En Banc.* June 30, 1955.]
(Petition for rehearing granted October 7, 1955.)

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, *Respondent*, v. THE CHAS. H. LILLY COMPANY, *Appellant.*[1]

*Jones & Grey*, for appellant.

*McMicken, Rupp & Schweppe* and *Warren A. Doolittle*, for respondent.

MALLERY, J.—The appellant, The Chas. H. Lilly Company, defendant below, rented a Scoopmobile from Air-Mac, Inc., on a month-to-month basis for five hundred fifty dollars a month. Appellant had paid four months' rental when the Scoopmobile was destroyed by fire on June 2, 1952. Appel-

[1]Reported in 286 P. (2d) 107.

lant had an option to purchase the Scoopmobile at base price of $5,105, plus tax, upon which would be applied all of the first month's rental, ninety per cent of the second month's rental, eighty per cent of the third month's rental, and seventy per cent of the fourth month's rental. The option was never exercised. The value of the equipment, at the time of its destruction, was stipulated to be four thousand dollars.

Air-Mac, Inc., collected for its loss from respondent insurance company, plaintiff below, and thereupon assigned to respondent its claim against appellant for the loss of the Scoopmobile.

Air-Mac, Inc., is not a party to this action, but the respondent stands in its shoes by assignment. Appellant contends it is entitled to the benefits of respondent's insurance and relies upon *Gillingham v. Phelps*, 5 Wn. (2d) 410, 105 P. (2d) 825, which is not in point. The respondent is subrogated to the rights of Air-Mac, Inc., and owes appellant nothing on account of the option. 8 C. J. S. 325, § 42.

The trial court gave judgment for respondent in the amount of four thousand dollars, plus attorneys' fees of eight hundred dollars and costs.

The first question presented by this appeal is whether or not appellant, which was without fault, was liable to Air-Mac, Inc., for the loss of the Scoopmobile in its possession, under the terms of the written agreement. The instrument itself is decisive of the question, and the common law upon bailments is beside the point. The pertinent language of the lease is:

"3. First Party [Air-Mac, Inc.] hereby expressly warrants that at the time of the execution of this agreement said personal property, above described, is in new condition. Second Party [appellant] covenants and agrees to keep and maintain said personal property in good mechanical condition during the term of this agreement, or any extension or renewal thereof, and *upon termination thereof to return to First Party the same in good mechanical condition, save and except the usual wear and depreciation as may be caused by reasonable use and wear thereof*." (Italics ours.)

Language of this general purport has been variously construed throughout the country. The Washington rule is stated in *Metropolitan Park Dist. v. Olympia Athletic Club*, 42 Wn. (2d) 179, 254 P. (2d) 475. In that case, the language in a letter was:

" 'We also agree to use every possible care in handling them and to replace any parts damaged while in our possession and to return them in the same condition in which we received them.' "

We said, "the letter recognized a duty beyond that of common-law bailment, amounting to an insurer's liability."

Our rule is also the same in landlord and tenant cases, which are analogous. A covenant to return premises at the end of a lease requires a tenant to replace buildings destroyed while in his possession. There appears to be no good reason for differentiating between leases of real and personal property. We adhere to the rule of *Metropolitan Park Dist. v. Olympia Athletic Club, supra,* and hold the appellant liable for the loss of the Scoopmobile.

Appellant contends that, in any event, respondent is not entitled to the value of the Scoopmobile, which was stipulated to be four thousand dollars, but only the lesser amount, which would be required to exercise the option to purchase.

Appellant is not entitled to benefits under an option it never attempted to exercise. Its position in this case has been the denial of liability *in toto.* Had it claimed the benefit of the option and tendered the amount provided for, even after destruction of the Scoopmobile, this suit would not have been necessary. Appellant must abide by its own election.

Appellant contends for the allowance of five hundred dollars attorneys' fees for respondent, and complains that the eight hundred dollars allowed by the trial court is too much. When attorneys' fees are allowable by a trial court to a prevailing party, the amount is within the discretion of the trial court, and we will reverse only for the abuse thereof.

We are not prepared to hold that the difference between the amount conceded by appellant and the amount allowed is great enough to constitute an abuse of discretion.

The judgment is affirmed.

SCHWELLENBACH, HILL, and ROSELLINI, JJ., concur.

HAMLEY, C. J. (concurring in the result)—I agree with Judge Donworth that this case cannot be distinguished from *Metropolitan Park Dist. v. Olympia Athletic Club*, 42 Wn. (2d) 179, 254 P. (2d) 475. The majority is therefore correct in following the *Metropolitan* case, unless that case is to be overruled. I agree with Judge Donworth that *Metropolitan* ought to be overruled. Since, however, there is not a majority in favor of this action, *Metropolitan* continues to state the law, and calls for the result reached by the majority.

WEAVER, J. (dissenting)—The property was destroyed through no fault of the bailee. The contract between the parties provides that the bailee will

". . . return to First Party [bailor] the same in good mechanical condition, save and except the usual wear and depreciation as may be caused by reasonable use and wear thereof . . ."

Does this mean that a bailee is liable as an insurer of personal property regardless of what happens to it? I do not think so.

I recognize that the authorities are divided on this question; but I believe that the weight of authority and the more persuasive decisions of appellate courts support a conclusion contrary to that reached by the majority opinion. The authorities are collected in an exhaustive annotation, "Bailee's express agreement to return property, or to return in a specified condition, as enlarging his common-law liability," appearing in 150 A. L. R. 269-305.

The particular provision of the contract before us expresses the same obligation which arises from the facts of the transaction at common law, and *implies the continued*

*existence* of the chattel. Of course, a bailee may enlarge his responsibility by contract, express or implied, but such liability should not be enlarged by interpretation beyond the common-law limits of a bailee's responsibility, when the contract expresses only the same liability as that which attaches to the transaction by the common law.

*Metropolitan Park Dist. v. Olympia Athletic Club*, 42 Wn. (2d) 179, 184, 254 P. (2d) 475 (1953), can be distinguished. Therein, the contract of bailment (established by a letter) provided that the bailee would "use every possible care." This was an agreement to exercise a higher degree of care than that fixed by law. In fact, the opinion states:

"It is our opinion that the letter recognized a duty beyond that of common-law bailment, amounting to an insurer's liability."

The *Metropolitan* case, *supra*, must be confined to its own facts, from which this court concluded that the bailee had assumed a duty beyond that of a common-law bailment. It is distinguishable from the instant case.

It is true that the bailee might insure himself against loss of the property by fire, but situations may arise against which he cannot insure. For example, under the contract of bailment as quoted, is the bailee liable as an insurer when he cannot deliver the chattel upon the due date, because it has been taken from his possession, under authority of valid legal process, but through no lack of diligence on his part; or, because he has already delivered it to the rightful owner on demand?

The rule established by the majority opinion would strip a bailee of all legal defenses for failure to redeliver the property, even though the power to return it no longer exists, through no fault of his.

If the intention of the parties, at the time they entered into the transaction, is to be given any weight, then the fact that the bailor insured the property against loss by fire, seems significant.

For these reasons, I dissent.

FINLEY, J., concurs with WEAVER, J.

DONWORTH, J. (dissenting)—I am in accord with the result of Judge Weaver's dissenting opinion, but I cannot agree with his statement that this case can be distinguished from *Metropolitan Park Dist. v. Olympia Athletic Club*, 42 Wn. (2d) 179, 254 P. (2d) 475.

In my opinion, these two cases are identical in respect to the contractual provisions existing between the parties relating to the bailee's responsibility. In both cases, the parties contemplated the continued existence of the chattel, and there was no contractual obligation on the bailee's part to insure its existence.

The written agreement in the *Metropolitan Park* case related to the loan of some bleachers used for the purpose of enabling spectators to sit and view athletic contests. They were capable of being taken apart and moved to another location where they could be put together again. The terms of the bailment were stated in a letter as follows:

" 'This will confirm our conversation regarding bleachers to be used at the Olympic Sports Center by the Olympic Athletic Club. It was agreed that Charlie Funk would install the bleachers and instruct the men who will handle them from now on in correct procedure in erecting and taking down. *We also agree to use every possible care in handling them and to replace any parts damaged while in our possession and to return them in the same condition in which we received them.* We have checked with our insurance company and our liability covers the new location as well as where we formerly showed. We are insured in the Hartford Accident and Indemnity Co. through Walter Draham and Co. in Olympia.' " (Italics mine.)

In the case at bar, the lease of the Scoopmobile stated the terms of the bailment thus:

"2. Second Party [appellant] is hereby granted the right and privilege to remove said personal property from Seattle, King County, Washington, where the same is now situated, to Pierce County, Washington, but the expense of such transportation and removal of said equipment shall be at the sole expense of Second Party and *upon termination of this lease* or any extension or renewal thereof, in the event Second Party fails to exercise the option to purchase the same, as hereinafter granted, *Second Party shall return and*

*redeliver said machinery to First Party* [Air-Mac, Inc.] at Seattle, King County, Washington.

"3. First Party hereby expressly warrants that at the time of the execution of this agreement said personal property, above described, is in new condition. Second Party covenants and agrees to keep and maintain said personal property in good mechanical condition during the term of this agreement, or any extension or renewal thereof, and *upon termination thereof to return to First Party the same in good mechanical condition, save and except the usual wear and depreciation as may be caused by reasonable use and wear thereof."* (Italics mine.)

In my opinion, the legal effect of these two instruments as to the bailee's obligations is precisely the same. In the *Metropolitan Park* case, the bailee agreed to use every possible care in assembling and disassembling the bleachers and to replace any parts thereof damaged while in the bailee's possession. In the Scoopombile lease in this case, the bailee agreed to keep it in good mechanical condition and return it to the lessor at the termination of the lease in good mechanical condition except for normal wear and depreciation.

I am unable to see any basis for holding the bailee to be an insurer in *either* case and, therefore, cannot agree with Judge Weaver that one case may be distinguished from the other. In neither case is the written agreement, in my opinion, susceptible of the interpretation placed upon it by the majority. On the contrary, I find nothing in the language used in either instrument to indicate that the parties intended that the bailee was undertaking the obligations of an absolute insurer of the continued existence of the chattel against all hazards whatsoever. See my dissenting opinion in the *Metropolitan Park* case.

While, as conceded in that opinion, there is a division of authority on the question, I think that this court in the present case should take advantage of the opportunity now afforded to overrule the *Metropolitan Park* case and to adopt what appears to me to be the majority and the more practical rule as shown by the following recent decisions:

*Perreault v. Circle Club* (1950), 326 Mass. 458, 95 N. E.

(2d) 204, where the court, although following the minority rule, said:

"In the absence of contract increasing the liability of a bailee, he is not liable for loss or damage occurring without his fault. *Foster v. Essex Bank*, 17 Mass. 479, 501. *Willett v. Rich*, 142 Mass. 356, 358 [7 N. E. 776]. *Rourke v. Cadillac Automobile Co. of Boston*, 268 Mass. 7, 8 [167 N. E. 231]. *Morse v. Homer's Inc.*, 295 Mass. 606, 608 [4 N. E. 2d 625]. *Kennedy v. B. A. Gardetto, Inc.* 306 Mass. 212, 216 [ 27 N. E. 2d 957]. *Stevens v. St. Botolph Holding Co.* 316 Mass. 238, 240 [55 N. E. 2d 450]. Greater responsibility can be imposed upon a bailee only by his express contract. *Amiro v. Crowley*, 256 Mass. 53, 56 [152 N. E. 78].

"Many cases have dealt with the liability of a bailee who has agreed to return the goods in the same condition as when received, and they have been lost or damaged without his fault. The weight of authority is that such an agreement adds nothing to the common law liability. The following cases are examples. [Citing numerous cases.]"

*Reconstruction Finance Corp. v. Peterson Bros.* (1947), (C. C. A. 5) 160 F. (2d) 124, involved a similar contract of bailment. The court, holding that there was evidence that the bailee had been negligent, nevertheless stated that the bailee's written agreement to return the equipment in as good condition as when delivered, ordinary wear and tear excepted, did not enlarge the bailee's obligation. It was said:

"We agree with appellant that the contract provisions relied on to enlarge Defense Plant's liability as bailee do not have that effect and that its obligation under the contract was only to use due care. . . .

"A great deal has been written on the subject of the enlargement by special contract of the common law liability of a bailee, and there is a difference of opinion as to what form of words will suffice. It will serve no useful purpose to discuss the authorities here. It is sufficient to say that while some cases have held that the use of language such as that relied on by appellant will enlarge the common law liability of bailee, the great weight of authority is to the effect that such a clause merely sets expressly out what a common law bailment implies, and does not add anything to it. The authorities cited in the margin show that this is

the rule not only in Texas but generally. If, therefore, the judgment had been predicated not upon appellant's negligence but upon its absolute liability, it would have to be reversed."

*Loeb v. Ferber* (1943), 346 Pa. 348, 30 A. (2d) 126, 150 A. L. R. 266, involved the theft of a fur coat by bailee's employees while stored in his custody. The court stated the rule thus:

"While a bailee may, by special contract, assume the extraordinary liability of an insurer towards the bailed property, *a covenant to insure may never be implied and will be imposed only where it is found in the agreement in clear and explicit language:* Story on Bailments (9th ed.) section 35; 6 Am. Jur., Bailments, section 180. A mere agreement to return the bailed property, without more, does not impose such unusual responsibility; and the same is generally held though the promise is 'to return in good condition', or as in the present case, 'in the same condition as when received.' The reason for this is well stated in *Young v. Leary*, 135 N. Y. 569, 32 N. E. 607, as follows: 'When language is used which does no more than express in terms the same obligation which the law raises from the facts of the transaction itself, the party using the language is no further bound than he would have been without it.' [Citing authorities.]" (Italics mine.)

*McCoy v. Home Ins. Co.* (1951), 170 Pa. Super. Ct. 38, 84 A. (2d) 249, involved the liability of an insurance company which had insured a bailee against legal liability for property entrusted to him. He leased a soda fountain, a slicing machine, and a cash register, which were destroyed by fire without his fault. If he was not liable to the owners of this equipment, then the insurance company could not be liable on its policy issued to him. The court said:

"But in the absence of a contract to insure or to be responsible as an insurer in respect of the bailed goods the bailee is required to exercise only due care, and his obligation is not enlarged or increased by an express agreement to return the articles in the same condition as when received. *Loeb v. Ferber*, 346 Pa. 348, 30 A. 2d 126 [150 A. L. R. 266]. He is not liable for loss incurred by fire, *Schell v. Miller North Broad Storage Co., Inc.*, 142 Pa. Superior Ct. 293, 16

A. 2d 680, unless the fire results from his negligence. *Schell v. Miller North Broad Storage Co., Inc.*, 157 Pa. Superior Ct. 101, 42 A. 2d 180. In his complaint plaintiff averred that the fire 'occurred wholly without the [his] fault, negligence or connivance . . .' and thus established his freedom from liability to the bailors of the soda fountain and the slicing machine. Since plaintiff incurred no legal liability as to them, defendant incurred no liability to him under clauses (1) and (2)."

In 4 Williston on Contracts (Rev. ed.) 2908, § 1041, the author lays down the applicable rule in this language:

"The duties of the hirer are to return the bailed property in as good condition as when received, necessary wear and tear excepted, unless injured without his fault, and to pay the agreed compensation."

This statement is supported by a footnote stating:

"The general view is that where a contract of bailment for hire contains a promise by the bailee to return the chattels in as good condition as when received, it is merely declaratory of the relational obligation to use reasonable care for their preservation. [Citing cases.]"

A summary of the authorities on this subject is found in 6 Am. Jur. 299, § 182, which reads as follows:

"According to the view supported by the apparent weight of authority, an intention to enlarge the common-law liability of the bailee is not indicated by the mere stipulation, unaccompanied by the assumption of some additional obligation such as an agreement to pay for the property in the case of nondelivery, that he agrees to return the subject of the bailment in good condition, or in as good condition as when received, ordinary wear and tear excepted. There are, however, decisions in some jurisdictions which apparently support a contrary rule."

The following comment, made in my dissent in the *Metropolitan Park* case, applies likewise to the case at bar, and should be considered in construing the bailee's obligation in the Scoopmobile lease:

"It seems to me that if it had been the intention of the parties that respondents [bailees] were to insure the bleachers against such hazards as fire, earthquake, hurri-

cane, acts of God and the public enemy, specific provision would have been made to that effect in their letter."

There is no disparity in the cases as to this point. The following statement from 6 Am. Jur. 345, § 242, bears directly on the case before us:

"*Rule that Ordinary Bailee Is Not Insurer.*—The rule appears well settled that unless made so by statute or express contract, an ordinary bailee, no matter to what class he belongs, is not an insurer of goods delivered into his keeping, although, as respects a few special kinds of bailees, such as common carriers and innkeepers, it seems that public policy makes them such. But unless he is of that class, he is liable only for loss resulting from his failure to exercise, with respect to the property bailed, the care required by law of such a bailee. As a general rule, therefore, except where a bailee has violated his contract *he will not be liable, in the absence of negligence, for loss* or injury in respect of the thing bailed, *resulting from* the inherent nature of the property itself or some infirmity thereof, disaster or *accidental casualty*, robbery, burglary, or theft, process of law directed against his bailor, confiscation or taking by superior force, the act or negligence of a third person, or the negligence or contributory negligence of the bailor, his servants, or agents." (Italics mine.)

The trial court found that "the fire which destroyed said scoopmobile occurred without negligence on the part of the defendant." This finding, when read in connection with paragraphs 2 and 3 of the lease agreement, compels a dismissal of respondent's action against appellant. The findings do not support the judgment entered by the trial court.

The majority opinion, in disregard of this well-settled legal principle (quoted above), imposes upon appellant the liability of an insurer merely because it promised to return the Scoopmobile at the termination of the lease "in good mechanical condition" and failed to do so without fault on its part. The use of this phrase does not even remotely imply an intention of the parties, in entering into the lease, that appellant was assuming such an absolute liability if the chattel should be destroyed without any negligence on its part. It would seem that Air-Mac, Inc., had no such inten-

tion because it insured the chattel against fire with respondent insurance company. Appellant apparently never entertained an intention of becoming an insurer of the article against all possible risks of damage or destruction, regardless of fault. Now, as the result of using the four words quoted above, appellant finds that it unwittingly insured not only the bailor, but re-insured the risk of loss by fire assumed by the bailor's insurer (respondent) when it issued the fire insurance policy to Air-Mac, Inc.

Thus, a bailee's promise to return a leased chattel "in good mechanical condition" becomes, by the majority opinion, an absolute policy of insurance against loss of the article by fire, irrespective of the bailee's negligence or lack of negligence in connection therewith. This, in my opinion, is an entirely unjustifiable interpretation of the lease signed by the parties in this case and is contrary to established rules applicable to cases such as this. Furthermore, if followed in future cases, the result will be that bailees who are unfortunate enough to have valuable personal property destroyed by any casualty while in their possession (no matter what may be the cause) will be compelled to resort to bankruptcy for relief from obligations they never intended to assume.

Liability for the loss of a bailed chattel without fault on the part of the bailee should not be imposed on him unless he expressly and clearly assumes in the contract of bailment the risk of the continued existence of the chattel against specific causes of loss or damage. 6 Am. Jur., 345, § 242 (quoted above).

For the reasons stated above, I would expressly overrule *Metropolitan Park Dist. v. Olympia Athletic Club, supra,* and reverse the judgment of the trial court in the present case, with directions to dismiss respondent's action and allow appellant a reasonable sum as attorneys' fees pursuant to paragraph 5 of the written contract.

OTT, J., concurs with DONWORTH, J.

---

October 7, 1955. Petition for rehearing granted.