[No. 33003. *En Banc.* March 15, 1956.]

ST. PAUL FIRE & MARINE INSURANCE COMPANY, *Respondent,*
v. THE CHAS. H. LILLY COMPANY, *Appellant.*[1]

*Jones & Grey,* for appellant.

*McMicken, Rupp & Schweppe* and *Warren A. Doolittle,* for respondent.

*Cornelius J. Peck, amicus curiae.*

ON REHEARING

FINLEY, J.—The facts involved are adequately set forth in the opinion previously filed in this matter on June 30, 1955, which appears in 46 Wn. (2d) 840, 286 P. (2d) 107.

[1] Reported in 295 P. (2d) 299.

■ In a simple bailment which is for the mutual benefit of both bailor and bailee, where the parties do not contract explicitly or by inference respecting damages, loss, or destruction of the bailed property, the rule is that a bailee who is without fault is not liable for damages to the bailed property or for its loss or destruction. The risk or loss in such cases falls on the bailor. There is no split of authority on this proposition. It is consistent with the general principles of Anglo-American law: that liability should not be imposed without fault. In this connection, as a corollary to the foregoing, it should be pointed out that a bailee may become an insurer when he explicitly contracts that he will be *absolutely liable, irrespective of fault,* if the bailed property is damaged or destroyed. There is no split of authority on this proposition.

However, in cases where the bailee has contracted to "return the property in the condition received, except for normal wear and tear," or words to that effect, there is a split of authority as to the interpretation and the effect to be given to the indicated language. A so-called minority view is that the indicated language implies an assumption of absolute, or an insurer's, liability by the bailee. On the contrary, the so-called majority view refuses to supply an implied or an inferred meaning to the above indicated language, and the result is that absolute liability is not imposed upon the bailee. Our discussion in the case of *Metropolitan Park Dist. v. Olympia Athletic Club,* 42 Wn. (2d) 179, 254 P. (2d) 475, is to the foregoing effect, where we said:

"The general rule is that the intention of the parties, ascertained from the wording of the contract, the subject matter of the bailment, and the circumstances of the parties, is controlling and determines whether an absolute contractual liability has been assumed. 6 Am. Jur. (Rev. ed.) 165, 299, § 182.

"If the subject matter of the bailment is destroyed without fault or negligence on the part of the bailee, any liability on his part for the loss must arise out of the contract of the parties and the relationships established thereby. In other words, in the absence of negligence, any recovery by the bailor must be founded upon contract. Of course,

when a bailee is negligent, a bailor may seek recovery in a tort action; however, no such question is involved in the instant case.

"When personal property is destroyed, the loss must fall somewhere. It is where property is destroyed when in the possession and under the control of a bailee that some confusion in thinking, feeling, or emotions may arise. But if thinking be pin-pointed along legal lines in terms of the possible legal relationships of the parties to a bailment, only two questions need be answered: (a) Was the bailee negligent? (b) Was there a contractual duty or responsibility on the part of the bailee?

"In view of the foregoing, our problem seems quite simple. All we have to determine is whether or not the bailee contracted to become an insurer as to the bailed property. But, with the stating of this problem, trouble arises immediately. In entering into an agreement, the parties used certain language. We have a problem, and a real one, in determining the meaning of the language used. Where the phrases, 'in good condition,' or 'in as good condition as when received,' or similar expressions, have been used in contracts of bailment, the decisions of other jurisdictions are in disagreement as to the meaning and effect of the indicated language. In 150 A.L.R. 277, it is said:

" 'There is a conflict in the authorities as to whether an express undertaking by a hirer of personal property to return the same "in good condition," "in as good condition as received," or undertakings of similar import, bind him absolutely as to the redelivery, or whether such redelivery is excused by act of God, inevitable accident, or other injurious acts occurring without his negligence. Both groups of decisions, those which hold the bailee's liability to be the same as under the common law and those which hold that his liability has become absolute by his express promise to return the bailed property in a specified condition, base their conclusions on exactly the same ground, namely, the alleged intention of the parties to the contract of bailment. Unfortunately, a close analysis of the cases as to the particular wording of the contract involved, the surrounding circumstances, and the subject of the bailment in each particular case does not disclose any distinction which would explain, much less warrant, the differences in the results.' "
(Italics ours.)

In respondent's brief and in his oral argument relative to the appellant's petition for rehearing, reference is made

to the following cases: *Alaska Coast Co. v. Alaska Barge Co.,* 79 Wash. 216, 140 Pac. 334; *Bratt v. Poole,* 105 Wash. 565, 178 Pac. 638; and *Locomotive Exchange v. Rucker Brothers,* 106 Wash. 278, 179 Pac. 859, 184 Pac. 848. On the basis of certain language contained in the decisions in these three cases, respondent states that this court some time ago adopted, or committed this jurisdiction to, the so-called minority rule. It seems to us that respondent's statement is too general in nature, and that an analysis of the decisions in the three cases demonstrates that the statement is somewhat inaccurate.

In the *Alaska Barge* case, *supra,* the bailor leased a steamship to the bailee for use in the Alaska waters. The parties agreed that the steamship *would be returned to the bailor in as good condition as received by the bailee, natural wear and tear, and the acts of God excepted;* and the parties *further agreed that the bailor would take out the broadest form of insurance coverage possible on the ship,* and *that such insurance would be paid for by the bailee,* and that *bailee* (it was explicitly agreed) *would not be liable for any damages to the ship which were covered by the insurance.* On a clear day, "with the sea as smooth as glass," in one hundred twenty-five fathoms of water, five miles from land in the middle of Frederick Sound, the ship struck some unknown object and broke off a propeller blade. It is significant that *the ship was not lost or destroyed; that it was returned in damaged condition* to the bailor, and that *the lawsuit was for damages to the steamship.* Apparently, the litigants were agreed that the damages were not covered by insurance and that the bailee could not escape liability for damages on the basis of the contract provisions respecting insurance. The question emphasized and decided by the court was that the damages had not been incurred as the result of an act of God, and that the bailee could not escape liability under the exception relative to damages resulting from acts of God. In other words, the court merely construed the explicit provisions of the contract, held that the exceptions as to liability were not

applicable, and that, inferentially, under the language of the contract, the bailee was liable. At p. 224, the court did make the following statement:

"Moreover, if we assume that the charter party was a bailment, the respective duties are fixed by contract, and the respondent's liability must be measured by that instrument. *Patterson v. Wenatchee Canning Co.,* 59 Wash. 556, 110 Pac. 379. In that case we said: 'A special contract of bailment prevails against general principles of law applicable in the absence of an express agreement.' "

In *Bratt v. Poole, supra,* the bailor leased a donkey engine to the bailee. The agreement provided explicitly that the donkey engine would be "returned in as good condition and order as the same is now or may be put into (reasonable use and wear thereof excepted)." *The donkey engine was not lost or destroyed.* It was returned in damaged condition, with certain integral parts of the machine lost or missing. The court held the bailee liable for the damages incurred on the basis of the provisions of the contract between the parties, saying:

"The rights of bailor and bailee are controlled by the written contract, where one exists, and they may impose upon each other any terms they may choose. 6 C.J. 1110. The bailee is liable upon an express covenant of a written contract to return the property in good condition, or as it was at the time of hiring. 6 C.J. 1112; *Robertson v. Plymouth Lum.* Co., 165 N.C. 4, 80 S.E. 894; *Direct Nav. Co. v. Davidson,* 32 Tex. Civ. App. 492, 74 S.W. 790."

We emphasize once again that the bailed property was not *lost* or *destroyed* in either of the two aforementioned cases; consequently, in a case where bailed property is lost or destroyed, these decisions certainly are not conclusive authority that a covenant to return in the condition received imposes an absolute or an insurer's liability upon a bailee.

In *Locomotive Exchange v. Rucker Brothers, supra,* the bailor leased a logging locomotive to the bailee. The parties agreed to deliver it back to the bailor in as good condition as received, except for normal wear and tear. The bailor

agreed to furnish an engineer to operate the locomotive. The engineer knew that the locomotive could handle about six loaded cars safely. He left four loaded cars on a level stretch of the main line at the foot of a difficult grade. He took the locomotive up the grade and attempted to bring twelve loaded cars down the grade. The locomotive ran wild, collided with the four cars at the foot of the grade, and was practically demolished. The bailor sued for damages. The opinion of the court briefly states:

"The lease contract does not establish the ordinary relationship incident to bailment, but is a special contract of bailment which 'prevails against general principles of law applicable in the absence of an express agreement.' "

However, the main issue discussed in the opinion is *negligence*—whether the engineer furnished by the bailor to operate the locomotive was an agent or employee under the control of the bailor or the bailee. The court held that the engineer was the agent of the bailee, that the engineer's negligence was attributable to the bailee, and that the bailor could recover damages. In the *Locomotive Exchange* case, the bailed property was substantially demolished, but as we read the decision, the court emphasized *negligence* on the part of the bailee, and this appears to us to have been the basis for the result reached by the court. Therefore, the decision is not applicable to a situation where *the bailee is without fault.*

From our analysis of the three above-mentioned cases, we cannot agree with the respondent in the instant case: that, by reason of the three decisions, this jurisdiction has for a long time been committed to the so-called minority rule; that, if bailed property is lost or destroyed through no fault of the bailee, the latter is subjected to an insurer's absolute liability if he has agreed *to return the property in the condition received, except for normal wear and tear.*

The decision of the majority in *St. Paul Fire & Marine Ins. Co. v. Chas. H. Lilly Co., supra,* states:

"The Washington rule is stated in *Metropolitan Park Dist. v. Olympia Athletic Club,* 42 Wn. (2d) 179, 254 P. (2d) 475."

But the above-quoted general statement paints too broadly. Upon careful analysis, it is subject to some refinement, and it is questionable whether the *Metropolitan* case committed this jurisdiction to the so-called minority rule. In the first place, the *Metropolitan* case was before this court on the issue of whether the trial court had properly sustained a demurrer to the complaint of the bailor, which was seeking to recover damages for the destruction of bailed property. As to this, the majority opinion in the *Metropolitan* decision significantly cites and quotes from *Ikola v. Snoqualmie Falls Lbr. Co.*, 12 Wn. (2d) 341, 121 P. (2d) 369, to the effect that a complaint attacked by demurrer will be construed liberally in favor of the pleader in determining whether or not a cause of action reasonably can be inferred from the averments of the pleading. The final paragraph of the majority opinion in the *Metropolitan* case refers to the *Ikola* decision, and states:

"Bearing in mind the principle outlined in the immediately preceding quotation as to the construction of pleadings attacked by a demurrer, and viewing the bailee's letter of confirmation as a whole, without lifting particular words or phrases out of the context, it is our opinion that the letter recognized a duty beyond that of common-law bailment, amounting to an insurer's liability, and that the plaintiff has alleged something more than just a common-law bailment."

The decision in the *Metropolitan* case refers to the language of the bailment contract, which stated in effect that the bailed property would be returned in the same condition as received. However, the decision clearly stated that the court was not solely concerned with the problem of interpreting this language, because the bailment contract contained additional language to the effect that the bailee agreed to use every possible care in handling the bailed property, and to replace any parts damaged while in the bailee's possession. The decision furthermore referred to the language of the bailee's letter, which read as follows:

" 'We have checked with our insurance company and our liability covers the new location as well as where we

formerly showed. We are insured in the Hartford Accident and Indemnity Co. through Walter Draham and Co. in Olympia.' "

The reasoning of the majority in the *Metropolitan* case was to the effect that the letter, and the reference to the insurance company, was in layman's language, and that it was not crystal clear, therefore, whether the bailee was thereby advising the bailor that the bailed property was covered by fire insurance or by public liability insurance; and, consequently, that on demurrer the ambiguity should be resolved in favor of the pleader—a possible inference being that the bailee had obtained fire insurance and would be responsible to the bailor for the destruction of the bailed property by fire. Thus, it could be said that the *Metropolitan* case means: The covenant to use "every possible care," considered together with the reference to insurance, was susceptible of an interpretation—at least for the purposes of the demurrer—that it was the intention of the parties that the bailee was to be an insurer.

In so far as the *Alaska Barge* case, the *Bratt* case, and the *Locomotive Exchange* case (cited above) indicate that this jurisdiction has adopted the minority rule, each should be and it is hereby explicitly overruled. In this connection, in so far as the *Metropolitan* case may be susceptible of an interpretation that it followed or adopted the minority rule, it should be and it is hereby overruled.

We explicitly hold that the so-called majority rule is controlling in this jurisdiction. It is more realistic as to the probable intentions of the parties to a bailment contract, and as to what was contemplated and understood by them. We are convinced that it is the more just and equitable rule.

This conclusion on our part seems more reasonable and more convincing if the problem of interpretation relative to the phrase, *to return in the condition received, except for normal wear and tear,* is approached initially in terms of the implied obligations or liabilities of an ordinary common-law bailee. In other words, if A rents his automobile to B so that the latter can make a trip, and nothing more

is agreed to by the parties, B is under an implied legal obli-gation (1) to return the car, and (2) to observe ordinary care in the use of it, and (3) to make good any damages, loss, or destruction caused by his negligence. But B is not liable for damages or loss occurring without his fault. Now what, if anything, is added to the obligation of such a com-mon-law bailee by a covenant to return in the condition received, except for normal wear and tear?

In this connection, Donworth, J., at p. 786 in his dissent appearing in *St. Paul Fire & Marine Ins. Co. v. Lilly Co.,* *supra,* cites *Loeb v. Ferber,* 346 'Pa. 348, 30 A. (2d) 126, 150 A. L. R. 266, and quotes therefrom a persuasive passage in support of the so-called majority rule, which reads as follows:

" 'While a bailee may, by special contract, assume the extraordinary liability of an insurer towards the bailed property, *a covenant to insure may never be implied and will be imposed only where it is found in the agreement in clear and explicit language*: Story on Bailments (9th ed.) section 35; 6 Am. Jur., Bailments, section 180. A mere agreement to return the bailed property, without more, does not impose such unusual responsibility; and the same is generally held though the promise is "to return in good condition", or as in the present case, "in the same condition as when received." The reason for this is well stated in *Young v. Leary,* 135 N.Y. 569, 32 N.E. 607, as follows: "When language is used which does no more than express in terms the same obligation which the law raises from the facts of the transaction itself, the party using the language is no further bound than he would have been without it." [Citing authorities.]' (Italics mine.)"

When parties to a bailment contract specify that the prop-erty is to be returned in the condition received, except for normal wear and tear, it is contrary to common· under-standing, unreasonable, and against ordinary meaning, to infer that the parties contemplated the possibility of loss or destruction of the property, and that, by using the par-ticular language, they agreed that the bailee would be an absolute insurer. If the parties intended that a bailee, irre-spective of fault, was to be an absolute insurer, they could

have so provided with little difficulty, merely by using clear and explicit language to that effect.

In the case at bar, the crucial language of paragraph two of the lease merely provided that, upon termination, the lessee shall return and redeliver the bailed property to the lessor at Seattle. This added nothing to the obligations of the bailee, mentioned hereinbefore, which would be imposed by law in the absence of the particular language. In paragraph three of the lease, the lessor warrants that the bailed property is in new condition, and the lessee

" . . . covenants and agrees to keep and maintain said personal property in good mechanical condition during the term of this agreement . . . and upon termination thereof to return . . . the same in good mechanical condition, save and except the usual wear and depreciation as may be caused by reasonable use and wear thereof."

This language did not explicitly prescribe the condition in which the bailed property was to be returned. The covenant to return in good mechanical condition, except for usual wear and depreciation, is relative, and actually ambiguous, unless the mechanical condition contemplated can be tied up with a point in time for "admeasurement of the condition." If we attribute to the language its ordinary or commonplace meaning, without supplying meaning by implication, the covenant embraces only the matter of the mechanical condition of the machine; and, viewed in this light, the lessee merely was obligated with respect to mechanical maintenance or upkeep.

The possibility of loss or destruction of the machine through no fault of the lessee was not clearly contemplated or covered by the language. It is only (1) by emphasizing (a) the reference to the new condition of the machine and (b) the reference to the return of it in good mechanical condition, except for wear and depreciation by reasonable use, and (2) by applying a liberal interpretation to these references, that it can be said the covenant is comparable to the classically bothersome one—*to return in the condition received, except for normal wear and tear*. Thus, it is only by liberal interpretation or construction that the crucial

language in the instant case may be said to approximate language usually involved in those cases where either the so-called minority or the so-called majority rule has been applied. In other words, the instant case is not a convincing example for application of the minority rule.

For the reasons indicated hereinbefore, we hold that the majority rule is controlling in this jurisdiction. Our previous decision in *St. Paul Fire & Marine Ins. Co. v. Lilly Co.,* filed on June 30, 1955, and appearing in 46 Wn. (2d) 840, 286 P. (2d) 107, is not adhered to. The judgment of the trial court is reversed, with directions to dismiss respondent's action and to allow appellant a reasonable sum as attorney's fee, pursuant to paragraph five of the written contract between the parties. It is so ordered.

HAMLEY, C. J., WEAVER, and OTT, JJ., concur.

DONWORTH, J. (concurring)—I concur in all of the foregoing majority opinion except certain portions of the discussion regarding the *Metropolitan* case. See my dissenting opinion in this case (46 Wn. (2d), at page 845). However, since the majority opinion now expressly overrules the *Metropolitan* case in so far as it may be susceptible of an interpretation that it followed or adopted the minority rule, there is no purpose in discussing that case further.

As stated in my dissenting opinion, I thought that the *Metropolitan* case should be expressly overruled, and I now concur with the majority in so doing to the extent indicated in the foregoing opinion.

ROSELLINI, J. (dissenting)—I adhere to the majority opinion as expressed in *St. Paul Fire & Marine Ins. Co. v. Lilly Co.,* 46 Wn. (2d) 840, 286 P. (2d) 107.

MALLERY, SCHWELLENBACH, and HILL, JJ., concur with ROSELLINI, J.